**LEOPARD ROOFING COMPANY, Inc.**
v.
**ASPHALT ROOFING INDUSTRY BUREAU et al.**
No. 4012.

United States District Court
E. D. Tennessee, N. D.
Oct. 5, 1960.

Ambrose, Wilson & Saulpaw, Knoxville, Tenn., C. Arthur Sullivan, Earl Keyes, Jackson, Miss., Arthur John Keefe, Peyton Ford, Ford, Larson, Greene & Horan, Washington, D. C., for plaintiff.

Arthur Medow, Sears, Roebuck and Co., Homan & Arthington, Chicago, Ill., Robert S. Young, Jr., Baker, Young, Young & Baker, Knoxville, Tenn., R. R. Kramer, Franklin J. McVeigh, Kramer, Dye, McNabb & Greenwood, Green, Webb & McCampbell, Knoxville, Tenn., Arthur L. Fisk, Jr., Asst. Gen. Atty., Johns-Manville Corp., New York City, Murray S. Monroe, Taft, Stettinius & Hollister, Cincinnati, Ohio, Malcolm I. Ruddock, Bradley M. Walls, Cadwalader, Wickersham & Taft, Victor Futter, Asst. Director Legal Dept., Barrett Div. Allied Chemical Corp., New York City, William J. Speers, Jr., Warner, Stackpole, Stetson & Bradlee, Boston, Mass., Porter R. Chandler, Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, J. H. Doughty, Hodges,

Doughty & Carson, Arthur Byrne, Poore, Cox, Baker & McAuley, Knoxville, Tenn., Cyrus Austin, Joseph W. Burns, Austin, Burns, Appell & Smith, New York City, John B. Robinson, Jr., Dallstream, Schiff, Hardin, Waite & Dorschel, Chicago, Ill., John G. Harkins, Jr., Pepper, Hamilton & Scheetz, Philadelphia, Pa., Thomas Kiernan, White & Case, New York City, Robert C. Keck, MacLeish, Spray, Price & Underwood, Chicago, Ill., Anderson & Snepp, Knoxville, Tenn., Lederer, Livingston, Kahn & Adsit, Chicago, Ill., O'Neil, Jarvis, Parker & Williamson, Creekmore & Thomson, Key & Lee, Fowler, Rowntree & Fowler, Taylor & Templeton, Frantz, McConnell & Seymour, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

Plaintiff has moved to transfer this case pursuant to Title 28 U.S.C. § 1404 (a).[1]

This Court, by memorandum filed September 28, 1960, ruled that the suit could have been brought in Mississippi against all of the corporate defendants, as such defendants were transacting business in that State within the meaning of the abovementioned statute.

The question as to whether defendant Asphalt Roofing Industry Bureau was subject to suit in Mississippi was set for hearing on October 12, 1960. Subsequent to the time the matter was set down for oral hearing, the plaintiff filed a notice of dismissal as to the defendant, Asphalt Roofing Industry Bureau, pursuant to Rule 41(a) (1) (i) and this defendant is no longer in the case.

In addition to the fourteen named corporate defendants, there are 73 individual defendants who are corporate officers and representatives of the corporate defendants, none of whom have been served with process. The suit as to the defendant, The Lehon Company, has been dismissed.

This is a private anti-trust action under the Sherman Anti-Trust Act and the Clayton Act as amended, and the individuals, all of whom are non-residents, are not subject to service beyond the territorial limits of the State of their residence as Title 15 U.S.C.A. § 22[2] only applies to corporations.

The defendants are charged with a conspiracy which is alleged to have covered the Southeastern States, and some of the overt acts were allegedly committed in Mississippi. Why a small corporation domiciled in Meridian, Mississippi would sue in a Knoxville Federal Court when the federal courts of Mississippi were available to it is difficult to understand. Plaintiff gives as a reason the pending Volasco case in Knoxville in which Lloyd A. Fry Roofing Company is a defendant. It now recognizes that this is not a sound reason.

The first amended complaint charges that since the Fall of 1955, twelve of the corporate defendants who are engaged in roofing manufacture and have their principal offices in New York, Philadelphia, Cincinnati, Boston and Chicago and 64 of their corporate officers; Asphalt Roofing Industry Bureau, an unincorporated industry trade association with offices in New York (no longer in the case); and, Sears, Roebuck and Company, having its principal place of business in Chicago and eight of its corporate officers, have been engaged in an unlawful conspiracy in restraint of trade in an attempt to monopolize interstate trade and commerce in violation of Sections 1 and 2 of the Sherman Act.

The first amended complaint also charges a conspiracy to discriminate in price on a territorial basis asserting the undercutting of plaintiff and certain oth-

1. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

2. "Any suit, action or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

er companies in the Southeastern area of the United States, including, of course, the States of Mississippi and Tennessee, for the purpose of driving plaintiff and two other companies located in Knoxville, Tennessee and one company located in Stephens, Arkansas out of business in violation of Section 2 of the Clayton Act (Title 15 U.S.C.A. § 13(a)) as amended by the Robinson-Patman Act.

■ The sole provision in the Judicial Code empowering this Court to transfer the case to Mississippi is the aforementioned Title 28 U.S.C. § 1404(a). This section of the Code has presented many problems to the courts since its passage. The Supreme Court on June 13, 1960 resolved one of the problems in the case of Hoffman v. Blaski (Sullivan v. Behimer), 363 U.S. 335, 80 S.Ct. 1084, 4 L. Ed.2d 1254, which had been the subject of a variety of opinions in the federal courts. The principle declared in those cases is that a federal court cannot transfer a case unless the suit could have been brought in the transferee forum.

The record in this case shows, and this Court has held, that the suit could have been brought against all of the corporate defendants in the Federal Court at Meridian, Mississippi. Since the individual defendants are not before this Court, the question whether they could have been sued in Mississippi is no longer pertinent to the consideration of the motion to transfer. It might be stated parenthetically that suit could have been brought against the individual defendants both in Mississippi and Tennessee if service of process could have been had upon them.

Brief reference is now made to some rules governing the transfer of cases.

■ Some of the courts have held that transfer is not available to the plaintiff. Barnhart v. John B. Rogers Producing Co., D.C.N.D.Ohio, 86 F.Supp. 595. In the Barnhart case, plaintiff could not have gotten service on the defendant in the transferee forum and the Court felt that the transfer would nullify the service provision of the Judicial Code.

Plaintiff was allowed to transfer the case from the Western District of New York to the Southern District (Northern Division) of California in the case of McCarley v. Foster-Milburn Co., D.C., 89 F.Supp. 643. The Upper Court in reversing this decision did not question the ruling of the trial judge that 1404(a) is available to a plaintiff, provided the suit could have been brought in the transferee forum. Foster-Milburn Co. v. Knight, 2 Cir., 181 F.2d 949.

The wording of the statute itself is not limited to the defendant and if plaintiff chose the wrong forum in the first instance, he should not be deprived of the right to correct his mistake at a later date. See article by Judge Irving R. Kaufman, Observations on Transfers Under Section 1404(a) of the New Judicial Code, 10 F.R.D. 595, 603.

■ The burden of proof is upon the plaintiff to show an adequate basis for a transfer. Anschell v. Sackheim, D.C., 145 F.Supp. 447, 451; Ferguson v. Ford Motor Co., D.C., 89 F.Supp. 45, 50; Hampton Theatres v. Paramount Film Dist. Corp., D.C., 90 F.Supp. 645; Glassfloss Corp. v. Owens-Corning Fiberglas Corp., D.C., 90 F.Supp. 967.

■ Sec. 1404(a) permits courts to grant transfers "upon a lesser showing of inconvenience" than was required under the doctrine of *forum non conveniens*, but this does not mean that the relevant factors have changed in determining the transfer. Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789.

■ A motion to transfer must be seasonably made. Barnhart v. John B. Rogers Producing Co., supra.

■ The parties agree that one of the principal factors to be considered in determining the question of transfer is the relative ability of the litigants to bear the expenses of trial in a given forum. McCarley v. Foster-Milburn Co., supra. The relative ability of litigants to bear expenses in any particular forum must be considered in determining what the interest of justice requires. Keller-Dori-

an Colorfilm Corp. v. Eastman Kodak Co., D.C., 88 F.Supp. 863, 866; Cinema Amusements v. Loew's, Inc., D.C., 85 F. Supp. 319, 327.

The criteria to be followed in determining a transfer were set forth by the Supreme Court in the case of Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055. This was a *forum non conveniens* case.

> "An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive * * * The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

> "Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled *at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation* * * *" (Emphasis by the Court.)

■ Defendants estimate that trial time of this case will consume from six to ten weeks and will involve the calling of several hundred witnesses. One of the reasons given by them why the case should not be transferred is that the case

of Volasco Products Company and Volunteer Asphalt Company v. Lloyd A. Fry Roofing Company, Civil Action No. 3525, now pending in this Court, involves the same alleged conspiracy that is involved in the case under consideration. The cases cited by the defendants in support of this theory involved situations where more than one case was pending in a court which involved common questions of law and fact and which were consolidated for trial, thus eliminating multiple trials. No one is bold enough to assert that the case under consideration can be consolidated with the Volasco and Volunteer case as that case is set for trial in this Court for November 14, 1960 and is calculated by one of the parties to last four weeks and by the other party to last ten weeks. Discovery has been going on in that case for approximately two years. If this is a plausible reason for refusing to transfer this case, then each party who claims to have been injured by the alleged conspiracy in any of the territories allegedly covered by the conspiracy could claim that he had a right to have his case tried in this Court. This contention, in the opinion of this Court, is lacking in merit.

■ Plaintiff describes itself as a "very small, comparatively unknown roofing manufacturer that does not manufacture a complete line". It alleges that it was incorporated in 1956 under the laws of Mississippi, with principal offices at Meridian, Mississippi; that the corporate defendants, except Sears, Roebuck and Company, are "national manufacturers" of roofing products, and that all of these corporations are domiciled in States other than Tennessee. Thus, we have a Mississippi corporation which claims to have been injured in Mississippi and a number of other States by alleged conspirators, all of whom are nonresidents of the State of Tennessee.

Plaintiff now realizes that it made a mistake in instituting this action in this Court. Mr. Peyton Ford, in his affidavit filed on August 8, 1960 in support of the motion to transfer states:

"2. Plaintiff instituted this action in this District because it believed this would be more convenient in that a similar litigation involving the Volunteer and Volasco roofing companies of Knoxville is pending here against the Fry Roofing Company, one of the defendants in this action.

"3. In the preparation for trial Plaintiff has discovered that there are more witnesses in Mississippi than was anticipated who will have to testify. Moreover, the records and books of Plaintiff will also be needed.

"4. As the Court knows, Plaintiff is a Mississippi corporation and all the defendants are incorporated in states other than Tennessee or Mississippi so that Plaintiff has a right to sue them in Mississippi.

"5. The various corporate defendants do business throughout southeastern United States and are subject to the service of process there under Section 22 of Title 15 U.S.C. so that Mississippi is more convenient not only for Plaintiff but also for all the defendants. Plaintiff also believes that Asphalt Roofing, the unincorporated association, defendant, does business in Mississippi.

"6. Accordingly, in the interest of justice, for the convenience of parties and witnesses, Plaintiff respectfully requests that the Court order a transfer of this case to Mississippi."

In another affidavit which was filed on August 11, 1960 he states:

"2. As a result of the economic peril point Plaintiff is in, it has to guard closely every dollar spent in this litigation.

"3. As soon as the case is at issue, there will be examinations of Plaintiff. Its books and records and auditors are in Mississippi and it will be much more convenient and less expensive for Plaintiff to handle those examinations there than here.

"4. Plaintiff's financial picture is such that a move from Tennessee to Mississippi is imperative in order to conduct this litigation at a minimum of expense.

"5. Recently, due to circumstances not involved in this case a firm of certified public accountants located in Jackson, Mississippi, commenced an audit of Plaintiff's books. Details concerning this audit will be available in Jackson, Mississippi.

"6. The expenses of the litigation have been such that, to date, Plaintiff has been unable to reimburse its counsel fully for all their necessary out of pocket expenses. The Plaintiff's general counsel and the officers and employees of Plaintiff are in the Southern District of Mississippi. It will materially reduce Plaintiff's expense if the litigation can be conducted there.

"7. Since this action began Plaintiff's financial situation has become more serious so that it is essential that every penny be saved.

"8. In fact, Plaintiff's cash resources are at such a low ebb, that if this case remains in Knoxville it is doubtful that Plaintiff can raise the funds needed to produce its witnesses for the trial. Certainly Plaintiff should be allowed to try its case in a District where the Trial Judge can see and hear its witnesses. It should not be forced to use depositions when unable to pay the expenses of needed witnesses.

"9. Insofar (sic) as Defendants are concerned, being large national corporations, Mississippi is as convenient a forum as Tennessee, if not more so.

"10. Remaining in Tennessee is such a financial hardship on Plaintiff, and of such inconsequence to Defendants, the Court should grant Plaintiff's motion to change the venue in the interests of justice, for

the convenience of parties and witnesses."

The obvious conclusion to be drawn from this affidavit and the other one hereinafter mentioned is that plaintiff's financial plight may prevent it from continuing the case in this Court if the motion to transfer is denied.

The defendants do not seriously dispute plaintiff's serious financial condition of which Mr. Ford speaks. They contend that the statements in the affidavits are too general in that they fail to give the names and number of witnesses and fail to state the substance of their testimony. Some of the courts have held that movant must supply such information in supporting affidavits in order to justify a removal order. In response to these contentions, Mr. Ford filed another affidavit on September 19, 1960 in which he names seven witnesses who live in Mississippi that he expects to use at the trial. The pertinent part of this affidavit is as follows:

"2. As previously stated Plaintiff finds it a financial hardship to continue to litigate this case at Knoxville. As trial approaches, Plaintiff fears it will be unable to finance the expenses of its many Mississippi witnesses at Knoxville. Among the many witnesses in Mississippi upon whose testimony Plaintiff will rely are the following:

"1. A. N. Morgan
"Jackson, Mississippi

"2. Don McWilliam
"Meridian, Mississippi

"3. J. B. Stokes—Director
"Meridian, Mississippi

"4. Malcolm R. Graham—New President
"Meridian, Mississippi

"5. W. P. Bridges, Jr.—Director
"Jackson, Mississippi

"6. Robert Singleton
"Jackson, Mississippi

"7. Bob Rutledge
"Meridian, Mississippi"

Some of the defendants assert that because of the greater distance from Chicago, Cincinnati, New York, Washington and Philadelphia, these places being the home offices of some of the defendants, to Meridian, Mississippi that it would work an inconvenience to them to transfer the case to Mississippi. It is said that the increase of distance would increase the transportation costs and man-hour costs of witnesses and counsel.

Experience with protracted cases of this character establishes that the greater part of discovery work is done at the principal offices of the accused defendants where the books and other records are located. If proper discovery is done each party knows in advance of trial all of the exhibits that are to be filed. It is the policy of this Court to require counsel to exchange exhibits and file them with the Clerk, excepting those which are to be used for impeachment, in advance of the trial. The witnesses are usually flown from their home to the place of trial to testify and after so testifying return home immediately. Whatever additional man-hours are required for the trial at Mississippi because of the distance factor would be small as compared with the man-hours spent in preparation for trial, the greater part of which, from the standpoint of the defendants, will be spent at places outside of Mississippi and Tennessee. The extra travel costs for the defendants to the place of trial in Mississippi would also be small as compared with the overall costs incurred in preparation for trial and for other matters necessary in the trial itself. Whatever inconvenience that may be caused to defendants because of the distance factor would not outweigh the injustice that would result to plaintiff should the case be tried in Knoxville. As previously indicated, the record shows that plaintiff may be deprived of an opportunity for a trial if the case is not transferred to Mississippi.

 Some of the defendants say that plaintiff waited too long to move for a transfer; that it waited approximately six months after filing the suit and two months after the Court raised the point. The suit was filed February 4, 1960.

The amended complaint was filed March 21, 1960. On May 26, 1960, an order was issued by the Court calling for a general conference with counsel. This order provided that:

"The general procedure for the conference is as follows:

"1. To consider the transfer of the case to the Eastern Division of the United States District Court for the Southern District, plaintiff being a Mississippi corporation and doing business in Meridian, County of Lauderdale, State of Mississippi."

Item No. 5 of this order stayed all discovery procedure until the issues were joined. The conference was postponed from time to time at the instance of one party or another. In the meantime, numerous motions were filed by the defendants raising what are commonly referred to as "fringe issues" and various orders were issued by the Court extending time for them to file supporting briefs.

The delay in holding the conference to consider, among other things, the question of transfer was caused by the parties themselves. For this reason, they are not in a position to complain of plaintiff's waiting some six months to file the motion to transfer. Since discovery was stayed, the defendants were not injured by the delay. Moreover, since postponement of consideration of the question of transfer was delayed at the instance of the parties themselves, they should not get an advantage from such postponement.

Defendants say that if the case is moved to Mississippi that this will cause duplication of work and the employment of local counsel in Mississippi. What has been said in the discussion of the point next above mentioned applies equally to this question. Since discovery was stayed at the threshold of the litigation, and since counsel now employed have been largely concerned with fringe questions, the extra expense to be incurred by the defendants in employing Mississippi local counsel will, in the opinion of this Court, be negligible.

The fact must not be overlooked that this is an anti-trust case which is controlled in the main by the anti-trust laws as distinguished from local laws.

The Court is of the opinion and finds that plaintiff's financial condition is such as it will probably be unable to pay the expenses of its willing witnesses to appear in person in Knoxville and to finance otherwise the expense of a trial in Knoxville. It is further of the opinion that, in the interest of justice, plaintiff's motion to transfer should be sustained and the case transferred from Knoxville to Meridian, Mississippi.

Although the application requests a transfer to the United States District Court for the Southern District of Mississippi, Jackson Division, all of the parties seem to agree that Meridian would be a much more convenient place for the defendants than Jackson. Some of the defendants requested at the hearing that the transfer be made to Meridian rather than Jackson in the event a transfer order were entered to which the attorneys for plaintiff agreed.

In summary the Court holds:

(1) That Section 1404(a) is available to plaintiff.

(2) That the suit could have been brought against all of the corporate defendants in Mississippi.

(3) That it is in the interest of justice for the case to be transferred from this Court to the Federal Court at Meridian, Mississippi.

Accordingly, an order has been passed to the Clerk transferring the case to Meridian, Mississippi.