**NORFOLK SHIPBUILDING & DRY-DOCK CORPORATION,**
Plaintiff,

v.

**The MOTOR YACHT La BELLE SI-MONE, her engines, tackle, apparel, furniture and equipment, in rem, and Channel Enterprises, Ltd., in personam, Defendants.**

**Civ. No. 340–73.**

United States District Court,
D. Puerto Rico.

July 30, 1973.

Bird & Bird, San Juan, P. R., for plaintiff.

Hartzell, Ydrach, Mellado, Santiago Pérez & Novas, San Juan, P. R., for defendants.

## MEMORANDUM OPINION AND ORDER

TOLEDO, Chief Judge.

This matter came on for hearing upon the motion of defendant Channel Enterprises, Ltd. (hereinafter named Channel) for issuance of an injunction prohibiting plaintiff, Norfolk Shipbuilding & Drydock. Corporation (hereinafter Norfolk Ship), from further pursuing Civil Action No. 617–72–N in the Eastern District of Virginia, and upon plaintiff's motion for a transfer of this action pursuant to Title 28, United States Code, Section 1404(a)[1] to the Eastern District of Virginia. To better understand the issues involved, we set forth the following factual background:

1. Certain repairs, modifications and alterations to the Motor Yacht La Belle Simone, owned by defendant Channel, were performed by Norfolk Ship between approximately April 11, 1972 and July 3, 1972, at Norfolk, Virginia and during a voyage of the vessel from Norfolk to New York.

2. The billing for said work was alleged to be $634,774.43, and after several partial payments were made and further payments allegedly refused, Norfolk Ship filed suit on December 13, 1972, against the Motor Yacht La Belle Simone, in rem and against Channel, owner of La Belle Simone, in personam, in the United States District Court for the Eastern District of Virginia, Norfolk Division. The suit was designated Civil Action No. 617–72–N.

3. Since La Belle Simone was not found at the time of filing of suit in the Eastern District of Virginia, no in rem service of process was possible, but Channel answered the complaint in personam pursuant to court order permitting late filing of same on March 16, 1973.

4. Pursuant to local practice in the Eastern District of Virginia, an initial pretrial conference was held on April 10, 1973, and an order was entered that day by the Honorable Walter E. Hoffman, District Judge, setting out a trial date of October 16, 1973, as well as dates for the attorneys' conference, final pretrial conference and various discovery deadlines.

5. On April 10, 1973, an extensive request for production of documents was served by Norfolk Ship upon Channel.

6. On April 17, 1973, La Belle Simone visited Ponce, Puerto Rico, and was attached by the United States Marshal pursuant to suit filed in the United States District Court for the District of Puerto Rico on that day by Norfolk Ship against La Belle Simone in rem. The basis of said suit, designated Civil No. 340–73, was the same allegedly unpaid billing which constituted the basis for the Norfolk suit.

7. On April 19, 1973, while La Belle Simone was still under attachment, the complaint was amended to include Channel as an in personam defendant. That same day, Channel entered a general appearance in San Juan and also made claim to La Belle Simone as owner thereof and posted a bond in the amount of $450,000 to secure the release of the vessel, which thereupon sailed from Puerto Rico.

8. On May 3, 1973, Adin K. Woodward, naval architect from Norfolk, Virginia, and Alyn Fife, marine surveyor from Newport News, Virginia, were subpoenaed to appear for depositions in the Virginia proceeding, and the records of both men with respect to La Belle Simone were also subpoenaed. Mr. Woodward was employed by the owner of La Belle Simone to oversee the work done at Norfolk while Mr. Fife represented Lloyd's Register, the classification soci-

1. Title 28, United States Code, Section 1404(a) deals with change of venue and reads:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

ety which reviewed and approved portions of the work done at Norfolk Ship.

9. On June 4, 1973, counsel for defendants filed in San Juan a motion to stay the Virginia action, requesting this Court:

"a. That it issue an injunction directed at Norfolk Shipbuilding & Drydock Corporation, to be served through its attorneys in Puerto Rico, Messrs. Bird and Bird, enjoining said plaintiff from proceeding further in the U. S. District Court for the Eastern District of Virginia, Norfolk Division, and warning them that their failure to obey said injunction would result in the cancellation of the security posted for the release of the Yacht La Belle Simone and/or in the dismissal of the present action, and such other relief as the Court may deem fit, including costs, expenses and attorney's fees, and;

b. That pending the granting of said injunction this Honorable Court issue an order to show cause directing Norfolk Shipbuilding & Drydock Corporation to appear before this Court on such date as the Court may set and show cause why it should not be enjoined from proceeding further in the U. S. District Court for the Eastern District of Virginia, Norfolk Division, as set forth above."

10. On June 5, 1973, the records of Adin Woodward were produced in Norfolk and his discovery deposition was taken there.

11. On June 8, 1973, counsel for Norfolk Ship filed in this Court:

a. Motion under Title 28, United States Code, Section 1404(a) for an order directing the transfer of the within action to the United States District Court for the Eastern District of Virginia.

b. Affidavit of counsel in support of motion.

c. Memorandum of law in support of motion.

12. On June 13, 1973, counsel for defendants filed an affidavit alleging that La Belle Simone had visited ports in Florida in January and February of 1973.

With the above factual background, the motion for an injunction and the motion for transfer were consolidated for hearing in this Court on June 15, 1973, at which hearing Norfolk Ship introduced the testimony of John H. Curtis as to the number of shipyard workers and supervisory personnel directly involved in the work performed on La Belle Simone. Mr. Curtis is manager of Norfolk Ship's Southern Yard and was in charge of all work done on La Belle Simone. He testified that if the men who worked on La Belle Simone or even the supervisory personnel—foreman and leadingmen—were needed as witnesses in San Juan that work would be seriously disrupted at Norfolk Ship's Southern and Brambleton yards and some effect would also be felt at the Berley yard. He further testified that most, if not all, workers on La Belle Simone still resided in the Norfolk area as did Mr. Woodward and Mr. Fife.

Based upon the evidence submitted, Counsel for Norfolk Ship argued the following reasons in favor of transfer:

1. All witnesses except for those presently on board La Belle Simone were located in the Norfolk area and amenable to service of process in the Eastern District of Virginia.

2. There are no witnesses in the case residing in Puerto Rico, and the cost of transporting witnesses to San Juan for trial would be excessive.

3. The transportation of Norfolk Ship's witnesses to San Juan for trial would seriously disrupt and hamper Norfolk Ship's ability to conduct business during that period.

4. Since a trial date of October 16, 1973 was already set in Norfolk and certain discovery had been completed and other discovery was pending in the Virginia action, it was argued that a final decision on the case would come sooner in Norfolk that in San Juan.

5. If the action in San Juan were not to be transferred, the various steps al-

ready taken in Norfolk, including discovery and a pretrial conference would have to be duplicated in San Juan, and that it was the stated policy of the Federal courts to avoid such duplicitous litigation.

6. Since the work had been performed in Norfolk, any necessity of visiting the premises during the trial or at any other time would be no problem in the Virginia action but would be impossible in the action in Puerto Rico.

7. Since there was voluminous documentary evidence in the form of specifications, blueprints, reports, etc., in Norfolk, it would be a burden to move all of the files to San Juan.

8. Since the cause of action arose in Virginia, presumably Virginia law would apply to various questions arising, and a Virginia court would be in a better position to be aware of and apply Virginia law than would a court sitting in Puerto Rico.

In support of transferring the San Juan action to Norfolk, plaintiff cited the following cases: Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); Continental Grain Co. v. Barge FBL–585, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960), and Hercules Company v. SS Aramis, 226 F.Supp. 599 (D.D.La.1964).

Counsel for defendants argued that Norfolk Ship had chosen Puerto Rico as a forum when they attached La Belle Simone in Ponce and required an appearance by Channel and the filing of security to obtain release of La Belle Simone. It was advocated that having made that choice, the plaintiffs could not be heard to complain if defendant chose to defend in Puerto Rico rather than in Norfolk. Further, it was argued that Norfolk Ship as plaintiff has no right to request a transfer under Title 28, United States Code, Section 1404(a).

In a post hearing Supplemental Affidavit of Merits filed June 21, 1973, Channel further argued that there was no need for a great number of Norfolk Ship employees to travel to San Juan, and it was offered to stipulate that any shipyard witnesses could testify via deposition and that the depositions of Woodward and Fife be used in the litigation in Puerto Rico. It was further alleged, "There is practically no likelihood that the Yacht La Belle Simone will ever call at Norfolk, but there is every likelihood that the vessel will call at Puerto Rico next fall. The Captain of the vessel is an essential witness as are several other deck and engine officers." The case Broussard v. The Jersbek, 140 F.Supp. 851 (S.D.N.Y.1956), was cited by Channel in support of the contention that a transfer is not available to plaintiffs who voluntarily chose their own forum.

In answer to this argument, Norfolk Ship cited the following cases as allowing a transfer under Title 28, United States Code, Section 1404(a) upon motion of plaintiff: Philip Carey Mfg. Co. v. Taylor, 286 F.2d 782 (CA6 1961), cert. den., 366 U.S. 948, 81 S.Ct. 1903, 6 L.Ed.2d 1242; Roberts Bros., Inc. v. Kurtz Bros., 236 F.Supp. 471 (D.C.N.J. 1964); United States v. United Air Lines, Inc., 216 F.Supp. 709 (D.C.Nev. and Wash.1962); United Air Lines, Inc. v. Wiener, 335 F.2d 379 (CA9 1964), cert. dismd., 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed. 549 (1964); Dufek v. Roux Distributing Co., 125 F.Supp. 716 (D.C. N.Y.1954); Thompson Products, Inc. v. Pennsylvania R. Co., 127 F.Supp. 449 (D.C.N.Y.1955); Torres v. Walsh, 221 F.2d 319 (CA2 1965), cert. den. 350 U.S. 836, 76 S.Ct. 72, 100 L.Ed. 746; Anschell v. Sackheim, 145 F.Supp. 447 (D.C.N.J. 1956); Atlantic City Electric Co. v. I–T–E Circuit Breaker Co., 247 F.Supp. 950 (D.C.N.Y.1965); United States v. Berkowitz, 328 F.2d 358 (CA3 1964); Hawkins v. General Controls Corp., 225 F.Supp. 971 (D.C.N.Y.1964); Leyden v. Excello Corp., 188 F.Supp. 396 (D.C.N. J.1960); Standard v. Stoll Packing Corp., 210 F.Supp. 749 (D.C.Pa.1962); app. dismd., 315 F.2d 626 (CA3 1962), and Hercules, supra.

In addition, Norfolk Ship argued that the Broussard case is inapplicable since

the denial of the motion to transfer was based upon a failure to show that said transfer would be for the convenience of witnesses and in the interest of justice, rather than because plaintiff was the moving party. There is mentioned in the *Broussard* case the *Barnhart* doctrine which arose from a case holding that a transfer under Section 1404(a) is not available to a plaintiff who voluntarily chose the forum. Barnhart v. John B. Rogers Producing Co., 86 F.Supp. 595 (DC Ohio 1949). Norfolk Ship argued that the *Barnhart* doctrine, if not completely overruled, has at least been discredited by subsequent cases considering the point. For instance, Thomas v. Silver Creek Coal Company, 264 F.Supp. 833, 835 (E.D.Pa.1967) chose not to follow the *Barnhart* doctrine in Pennsylvania with the following words:

"The *Barnhart* decision has been seriously criticized as stating an 'erroneous proposition' of law and should not be followed."

There is also a discussion of a plaintiff's right to move for a transfer and the *Barnhart* decision in 1 Moore's Federal Practice, Paragraph 0.145 (4.–2 (1960 ed.), which states at page 1768:

"Nearly all the decisions reject the *Barnhart* rule, and adopt the rule that any party to the action may make a motion for transfer." [2]

■ After hearing arguments and testimony and reviewing memoranda submitted and authorities cited, this controversy resolves itself into three questions for this Court to answer:

1. Does a plaintiff who has brought an action *in rem* and *in personam* in one Federal District Court without being able to obtain in rem service therein, and who subsequently brings a second action in a different Federal Court against the same parties, based upon the same claims, wherein he successfully attaches the vessel involved, have a right to transfer the second action, including the security posted, to the original forum?

2. If such a right exists, do the facts in the present case warrant such a transfer over the strenuous objections of defendants?

3. If such a right does not exist, or if the facts in the present case do not warrant a transfer, is it proper to issue an injunction against further prosecution of the original proceeding under pain of having the second proceeding and/or its security posted therein dismissed?

■ In reviewing the available case law, it is settled that a transfer of an *in rem* and *in personam* suit from one Federal District Court to another where the same issues are already in litigation is available, at least to the defendant. *Continental Grain Company,* supra. In that case, a partially loaded barge sank at the pier in Memphis, Tennessee, causing damage both to the barge and to the cargo. The owner of the barge sued Continental in a Tennessee State Court, and Continental removed the proceeding to a Federal District Court in Tennessee. Continental later filed an *in rem* and *in personam* action against the barge and its owner in the United States District Court in New Orleans where the barge could be seized. The owner of the barge gave a letter of undertaking in New Orleans to avoid having the barge seized and then moved to transfer to the United States District Court at Memphis. The Louisiana District Court granted the motion to transfer, the Court of Appeals for the Fifth Circuit affirmed at 268 F.2d 240, and the Su-

2. In support of this contention, the following cases are cited: In re Josephson, 218 F.2d 174 (CA1 1954); Troy v. Poorvu, 132 F. Supp. 864 (D.C.Mass.1955); Dufek v. Roux Distributing Co., supra; Shapiro v. Bonanza Hotel Co., 185 F.2d 777 (CA9 1950); Masterpiece Productions, Inc. v. United Artists Corp., 90 F.Supp. 750 (E.D.Pa.1960); Internatio-Rotterdam, Inc. v. Thomsen, 218 F.2d 514 (CA4 1955); Torres v. Walsh, supra; Pruess v. Udall, 123 U.S.App.D.C. 301, 359 F.2d 615 (1965); Philip Carey Mfg. v. Taylor, supra; Leopard Roofing Co. v. Asphalt Roofing Industry Bureau, 190 F.Supp. 726 (E.D.Tenn.1960).

preme Court granted certiorari to consider whether the District Court erred in ordering that the case be transferred. In affirming the transfer, Mr. Justice Black stated:

" * * *. The case, therefore, if tried in New Orleans, will bring about exactly the kind of mischievous consequences against 'the interest of justice' that § 1404(a) was designated to prevent, that is, unnecessary inconvenience and expense to parties, witnesses and the public." (364 U.S. at 21, 80 S.Ct. at 1472).

and

" * * *. To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent. Moreover, such a situation is conducive to a race of diligence among litigants for a trial in the District Court each prefers. * * *."

"The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court. That situation exists here." (364 U.S. at 26, 80 S.Ct. at 1475.)

It is also apparent that the so-called *Barnhart* doctrine is now in disrepute and that a plaintiff has the right to move for a transfer just as a defendant may.

The transfer of an admiralty action from the District where the vessel was successfully libelled back to the District where suit was initially brought but where *in rem* service was not accomplished was ordered upon motion of plaintiff in the *Hercules*, supra, case, Judge Ellis stating at page 600 of 226 F.Supp.:

"In this particular case the entire cause of action arose in the District of New Jersey. The only connection this action has with the Eastern District of Louisiana is the presence of proctors for libellant and respondent, none other. All of the documentary evidence necessary for the burden of proof are found in that area and all of the witnesses reside there.

The Court is not prone to cast upon libellant the expense of transporting everything to the Eastern District of Louisiana. This expense would, indeed, be significant.

"The Court also notes that the District of New Jersey not only was a district 'where suit might have been brought,' but was actually a district where suit was brought. But for an untimely attempt at seizure by the U. S. Marshal, this libel would have never been filed in the Eastern District of Louisiana."

Based upon the *Continental* case, supra, and the line of cases quoted above making a transfer available to plaintiff, and agreeing with the *Hercules* decision, supra, we hold that a transfer of the instant action to Virginia is available to Norfolk Ship upon proper showing that the convenience of parties and witnesses, in the interest of justice, would warrant such a transfer.

We need not reiterate the list of considerations put forth by Norfolk Ship in support of the transfer. Defendant's allegation that those shipboard witnesses necessary for trial will more likely visit Puerto Rico than Norfolk this year is not convincing. There is no evidence that such a visit would coincide with a trial date and if these witnesses are to testify by deposition, it may be taken anywhere without regard to the location of trial.

Suit was filed in Puerto Rico solely to obtain security to satisfy any judgment which might be granted in this controversy. The fears of Norfolk Ship as to satisfying a judgment without the availability of such security are understandable. Plaintiff's allegations that La Belle Simone is a vessel of Liberian registry

and the only asset of Channel, stand unrebutted. Should the vessel be lost or should it remain outside of United States jurisdiction it is conceivable that a successful litigation of their claim could leave Norfolk Ship with naught but unpaid attorney's fees and costs to show for it. Had La Belle Simone been attached in Norfolk, the Puerto Rican action would never have been commenced. It should go no further.

In view of the foregoing, the Court hereby denies defendant's motion for an injunction as to prosecution of the Virginia litigation by plaintiff and order the transfer of the instant action to the United States District Court for the Eastern District of Virginia, Norfolk Division; and it is further

Ordered, that the Clerk of this United States District Court for the District of Puerto Rico transfer the entire file in the action, including all bonds posted as security, to the Clerk of the United States District Court for the Eastern District of Virginia, Norfolk Division, together with a certified copy of this order.

It is so ordered.