**TRANS–ASIATIC OIL LTD. S.A.,**
**Plaintiff, Appellee,**

v.

**APEX OIL COMPANY, Defendant,**
**Appellant.**

**No. 83–1948.**

United States Court of Appeals,
First Circuit.

Argued May 9, 1984.

Decided Sept. 13, 1984.

Pedro J. Santa-Sanchez, Hato Rey, P.R., with whom Fradique A. Rocha, and O'Neill & Borges, Hato Rey, P.R., were on brief, for defendant, appellant.

Francisco G. Bruno, Hato Rey, P.R., with whom Jorge Carazo Quetglas, and Santiago, Perez, Bermudez & Bruno, Hato Rey, P.R., were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and PETTINE,[*] Senior District Judge.

LEVIN H. CAMPBELL, Chief Judge.

This appeal arises from a maritime attachment in the United States District Court for the District of Puerto Rico. On February 24, 1983, Trans-Asiatic Oil Ltd., S.A. ("Trans-Asiatic"), a Panamanian corporation, filed a verified complaint in admiralty against defendant Apex Oil Co. ("Apex"), a Missouri corporation, seeking to recover demurrage charges for which defendant was alleged to be liable under certain charter parties. In the complaint Trans-Asiatic prayed for process under Rule B of the Supplemental Rules for Cer-

---

[*] Of the District of Rhode Island, sitting by designation.

tain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure to attach a $324,000 debt owed defendant by the Puerto Rico Electric Power Authority ("PREPA"). The clerk of the district court issued a Summons and Process of Maritime Attachment, which Trans-Asiatic served upon PREPA on March 2, 1983. PREPA filed an answer on March 17 informing the district court that it was retaining the $324,000 owed to Apex.

Apex is said to have received notice of the attachment on March 4, 1983, after the process of attachment was served on PREPA. On March 18, 1983, Apex filed a restricted appearance in the district court, seeking to vacate the attachment as unconstitutional or in the alternative requesting an expedited hearing. On March 28, 1983 the district court set a hearing on Apex's motion for April 15, 1983. Postponed at Apex's request, the hearing took place on April 22, 1983. The district court denied defendant's motion on October 20, 1983 and allowed the attachment to stand. The district court stated in its opinion that the order involved controlling questions of law, the resolution of which would "materially advance the termination of the litigation." We have since exercised our discretion under 28 U.S.C. § 1292(b) to allow an interlocutory appeal from the district court's order.

Rule B provides in part that,

With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees named in the complaint to the amount sued for, if the defendant shall not be found within the district. Such a complaint shall be accompanied by an affidavit signed by the plaintiff or his attorney that, to the affiant's knowledge, or to the best of his information and belief, the defendant cannot be found within the district. When a verified complaint is supported by such an affidavit the clerk shall forthwith issue a summons and process of attachment and garnishment.

Apex challenges the constitutionality of the attachment on two grounds. First, Apex contends that it lacks the minimum contacts with Puerto Rico essential to an exercise of personal jurisdiction under the standards enunciated in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Second, Apex argues that the procedures mandated by Rule B do not constitute due process of law under the principles of *Sniadach v. Family Finance Corp. of Bayview*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and its progeny.

I.

In *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, the Supreme Court limited a state's ability to base personal jurisdiction solely on the presence of property in the state, applying the "minimum contacts" analysis of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), to quasi-in-rem jurisdiction. The Court said,

We are left, then, to consider the significance of the long history of jurisdiction based solely on the presence of property in a State. Although the theory that territorial power is both essential to and sufficient for jurisdiction has been undermined, we have never held that the presence of property in a State does not automatically confer jurisdiction over the owner's interest in that property. This history must be considered as supporting the proposition that jurisdiction based solely on the presence of property satisfies the demands of due process ... but it is not decisive. "[T]raditional notions of fair play and substantial justice" can be as readily offended by the perpetuation of ancient forms that are no longer justified as by the adoption of new procedures that are inconsistent with the basic values of our constitutional heritage.... The fiction that an assertion of jurisdiction over property is anything but an assertion of jurisdiction over the owner of the property supports an ancient form without substantial modern justification. Its continued acceptance would serve

only to allow state-court jurisdiction that is fundamentally unfair to the defendant. 433 U.S. at 211–12, 97 S.Ct. at 2583–84 (footnote and citations omitted). Defendant argues that *Shaffer v. Heitner* requires us to apply the *International Shoe* "minimum contacts" analysis to admiralty attachments under Rule B, thus defeating any attachment in the District of Puerto Rico here.

■ In *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980), the Court discussed the functions of the "minimum contacts" test set out in *International Shoe:*

> The concept of minimum contacts ... can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

Of the two above "functions," the latter is inapposite here, since admiralty jurisdiction is the exclusive province of the federal courts, and the judicial power of the United States extends to the physical boundaries of the nation, which embrace both Puerto Rico, the locus of the property, and Missouri, the home of the defendant corporation. *The Glide*, 167 U.S. 606, 17 S.Ct. 930, 42 L.Ed. 296 (1897); U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 1333 (1982). Federal jurisdiction being national in scope, due process only requires sufficient contacts within the United States as a whole. *FTC v. Jim Walter Corp.*, 651 F.2d 251, 256 (5th Cir.1981); *Fitzsimmons v. Barton*, 589 F.2d 330, 333 (7th Cir.1979); *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir.1974). *Cf. Robertson v. Railroad Labor Board*, 268 U.S. 619, 622, 45 S.Ct. 621, 622, 69 L.Ed. 1119 (1925) ("Congress clearly has the power to authorize a suit under federal law to be brought in any inferior federal court. Congress has power, likewise, to provide that the process of every district court shall run into every part of the United States.").

■ Since Apex is a United States corporation headquartered in Missouri, we need not decide to what degree a foreign admiralty defendant must have minimum contacts with the United States to be subject to quasi-in-rem jurisdiction. *But see Volkswagen Interamericana v. Rohlsen*, 360 F.2d 437, 440 n. 3 (1st Cir.1966). We do, however, hold that the limits on a state's power over non-resident defendants do not apply to a federal court sitting in admiralty in that state. *Filia Compania Naviera, S.A. v. Petroship, S.A.*, 1982 A.M.C. 1217, 1225 (S.D.N.Y.1982); *Engineering Equipment Co. v. S.S. Selene*, 446 F.Supp. 706, 709 (S.D.N.Y.1978). *Cf. Driver v. Helms*, 577 F.2d 147, 157 (1st Cir.1978) (minimum contacts analysis irrelevant to nationwide service of process under 28 U.S.C. § 1391(e)), *rev'd on other grounds sub nom. Stafford v. Briggs*, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980).

■ While this holding adequately addresses the limitation on sovereignty discussed in *Worldwide Volkswagen*, it does not address the other concern related in that case for protecting defendants "against the burdens of litigating in a distant or inconvenient forum." In a federal context, however, that concern is properly addressed by the nonconstitutional doctrine of *forum non conveniens* codified at 28 U.S.C. § 1404 (1982). *See FTC v. Jim Walter Corp.*, 651 F.2d at 256–57; *Fitzsimmons v. Barton*, 589 F.2d at 334. The Supreme Court has applied *forum non conveniens* to cases in admiralty, stating that section 1404 was "design[ed] to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 27, 80 S.Ct. 1470, 1475, 4 L.Ed.2d 1540 (1960). *See also Norfolk Shipbuilding & Drydock Corp. v. Motor Yacht LaBelle Simone*, 371 F.Supp. 985 (D.P.R.1973); C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure: Jurisdiction* § 3843 (1976).

■ In admiralty "traditional notions of fair play and substantial justice" will often be best served by permitting suitors to seek redress in districts where the shipowner's goods or credits can be found, since the vessel itself may be in a distant port and the owner's home may likewise be far away. The need for special procedures for resolving disputes in admiralty has long been recognized:

> Courts in admiralty are established for the settlement of disputes between persons engaged in commerce and navigation, who, on the one hand, may be absent from their homes for long periods of time, and on the other hand, often have property or credits in other places. In all nations, as observed by an early writer, such courts "have been directed to proceed at such times and in such manner, as might best consist with the opportunities of trade, and least hinder or detain men from their employments." ... To compel suitors in admiralty (when a ship is abroad and cannot be reached by a libel *in rem*) to resort to the home of the defendant, and to prevent them from suing him in any district in which he might be served with a summons or his goods or credits attached, would not only often put them to great delay, inconvenience, and expense, but would in many cases amount to a denial of justice.

*In re Louisville Underwriters*, 134 U.S. 488, 493, 10 S.Ct. 587, 589, 33 L.Ed. 991 (1890). Thus the Second Circuit has stated that, "[b]ecause the perpetrators of maritime injury are likely to be peripatetic ... maritime actors must reasonably expect to be sued where their property may be found." *Amoco Overseas Oil v. Compagnie Nationale Algerienne*, 605 F.2d 648, 655 (2d Cir.1979).

■ As a participant in maritime commerce, Apex must expect to be sued wherever its credits and property may be found. Apex objects that because it has a corporate office in Missouri, it should be sued there, not in Puerto Rico. But as we stated *supra*, the convenience of defendant is more properly addressed in a motion for change of venue under 28 U.S.C. § 1404

(1982). Apex could post a bond for the attached credits under Rule E(5) of the Supplemental Rules and then seek a transfer of the case to Missouri. To disapprove maritime attachments on constitutional grounds so as to require that plaintiffs sue corporate entities only in their home districts would expose plaintiffs, who might often be seamen or suppliers at some distant port, to the vagaries of "[i]ntricate corporate shells ... employed to disguise the ownership of shipping assets." *Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. de Navegacion*, 732 F.2d 1543, 1548 (11th Cir.1984). We hold that the exercise of personal jurisdiction over the defendant based on the attachment of credits in the District of Puerto Rico does not violate due process.

## II.

Apex's second complaint is that the attachment procedures provided in Rule B do not constitute due process of law under the fifth amendment. Apex argues that the lack of judicial participation in the issuance of the process of attachment, the absence of prior notice and hearing, the failure of plaintiff to post a bond to secure potential damages arising from the attachment, and the lack of a prompt post-attachment hearing render the attachment in the present case unconstitutional.

■ In addressing this contention, it is necessary to keep in mind that "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). We therefore approach the issue with an eye toward the special features of admiralty jurisdiction. The maritime attachment has a long history in the courts of admiralty. Its purposes are twofold: "first, to compel appearances; secondly, to condemn for satisfaction." *Manro v. Almeida*, 23 U.S. (10 Wheat.) 473, 489, 6 L.Ed. 369 (1825). *See also Swift & Co. Packers v. Compania Colombiana del Caribe, S.A.*,

339 U.S. 684, 693, 70 S.Ct. 861, 867, 94 L.Ed. 1206 (1950). These purposes remain important to resolving disputes arising from maritime commerce:

> Maritime law deals primarily with ships that sail the seven seas. A ship may be here today and gone tomorrow, not to return for an indefinite period, perhaps never. Assets of its owner, including debts for freights ... within the jurisdiction today, may be transferred elsewhere or paid off tomorrow. It is for these reasons that ... attachment in actions *in personam*, Supplemental Rule B, [was] developed. These reasons are as valid today as they ever were.

*Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 637 (9th Cir.1982).

 Another special feature of this case is that the rule in question was promulgated by the Supreme Court. While this fact does not prevent us from reviewing the constitutionality of the rule, *see Polar Shipping Ltd.*, 680 F.2d at 635, we do note that,

> [The admiralty rules'] lineage sets them apart from common law based sequestration, garnishment, and attachment laws developed by the legislatures of the several states. As offspring of the very institution charged with mandating the procedural safeguards required before property may be taken, Supplemental Rules for Admiralty must be reviewed with special deference.

*Schiffahartsgesellschaft*, 732 F.2d at 1549.

To this we add that admiralty defendants are more likely to be shipping corporations and other commercial organizations than they are to be poor debtors, indigents or people needing special protection from the courts. Indeed, the creditor, if a seaman or small supplier, may more often be the one in need of special protections. *See id.* at 1548.

This is not to suggest that the special circumstances of Rule B attachments would justify process falling below fair and reasonable norms. In determining what process was due Apex under the fifth amendment, we begin with the two most recent Supreme Court decisions reviewing attachments. *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

In *Mitchell*, the Court upheld a sequestration of consumer goods pursuant to Louisiana law. The sequestration was ordered by a judge upon the filing of an affidavit by the vendor, Grant, stating the basis for the complaint. There was no prior notice or hearing, although Grant was required to post a bond. A hearing was held on Mitchell's motion to dissolve the writ of sequestration five weeks after the writ was executed. The Court held that the procedures employed were constitutionally sound. In response to Mitchell's argument that a pre-sequestration hearing was required, the Court stated, "[t]he usual rule has been '[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity for ultimate judicial determination of liability is adequate.'" *Mitchell*, 416 U.S. at 611, 94 S.Ct. at 1902 (quoting *Phillips v. Commissioner*, 283 U.S. 589, 596–97, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931)). The Court held that despite lack of prior notice and hearing the requirements of due process were satisfied by the prompt post-sequestration hearing, the judicial participation in granting the writ, and the posting of a bond to protect the defendant from wrongful sequestration. *Mitchell*, 416 U.S. at 618–19, 94 S.Ct. at 1905–06.

In *Di-Chem*, the Court struck down an attachment of a corporation's bank account pursuant to a Georgia statute. Under the statute, a writ of attachment was issued by a court clerk upon filing of an affidavit of plaintiff or plaintiff's attorney. Plaintiff was required to file a bond to protect the defendant, but the only way for the defendant to regain possession was to file a bond in lieu of the property. The Court held this procedure vulnerable to constitutional attack:

> Here, a bank account, surely a form of property, was impounded and, absent a

bond, put totally beyond use during pendency of the litigation on the alleged debt, all by a writ of garnishment issued by a court clerk without notice or opportunity for an early hearing and without participation by a judicial officer.

*Di-Chem,* 419 U.S. at 606, 95 S.Ct. at 722.

■ We believe that because of the mobility of maritime property, Rule B is not rendered invalid by the absence of any pre-attachment notice to the defendant and opportunity for hearing.

The need to attach now and notify later is as great now as it ever was, if not greater. A ship can quietly slip its moorings and depart the jurisdiction. It can easily take with it such tangible property as may be within the jurisdiction. And credits can be quickly transferred elsewhere.

*Polar Shipping Ltd.,* 680 F.2d at 637. The Supreme Court has noted that "attachment necessary to secure jurisdiction" is one type of situation in which attachment without prior notice and hearing is permissible. *Fuentes v. Shevin,* 407 U.S. 67, 91 n. 23, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (citing *Ownbey v. Morgan,* 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921)). Securing jurisdiction is a primary purpose of maritime attachments, *see supra,* and the provision of pre-attachment notice and hearing would substantially frustrate that purpose. But *Di-Chem* and *Mitchell* make clear that the absence of prior notice and hearing necessitate close scrutiny of the remaining procedural protections. The three procedural features on which the *Mitchell* Court focused were advance authorization of the attachment by a judge, opportunity for a prompt post-attachment hearing, and posting of a bond by plaintiff. In the instant case we must decide whether prompt post-attachment notice and hearing alone can satisfy due process.

■ We agree with the two other circuits that have upheld attachments un-

der Rule B that " '[t]he basic protection required for the debtor is the assurance of a prompt postgarnishment hearing before a judge.' " *Polar Shipping Ltd.,* 680 F.2d at 640 (quoting *Di-Chem,* 419 U.S. at 611 n. 3, 95 S.Ct. at 725 n. 3 (Powell, J., concurring)). *See Schiffahartsgesellschaft,* 732 F.2d at 1545. *Contra Grand Bahama Petroleum Co. v. Canadian Transportation Agencies,* 450 F.Supp. 447, 456–57 (W.D.Wash. 1978). Such a hearing is an effective means for an admiralty defendant to dissolve a wrongful attachment. While prompt notice and hearing are not expressly required by Rule B,[1] the district court here held that Rule 12 of the Federal Rules of Civil Procedure (which, pursuant to Rule A of the Supplemental Rules, also governs admiralty cases) provides a mechanism for promptly challenging an attachment prior to trial. *See also Amstar Corp. v. S/S Alexandros T.,* 664 F.2d 904, 912 (4th Cir. 1981). Apex in fact received notice within two days of execution of the attachment and was granted a hearing within four weeks of its request for an expedited hearing.[2] We review Apex's due process claim in light of the process actually received, not the theoretical minimum under Rule B. *Schiffahartsgesellschaft,* 732 F.2d at 1545. We hold on the facts of this case that Apex received due process under the fifth amendment.

While requiring advance authorization of maritime attachments by a judge ex parte might be a desirable addition to Rule B, we do not see how Apex was harmed by the absence of such participation in the present case. The Rule E(2) requirement that the verified complaint

shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading

---

**1.** A prompt hearing is specifically required under proposed revisions of Rule E. *See* note 3, *infra.*

**2.** Apex requested a hearing on March 18. The district court scheduled a hearing for April 15, but the hearing was postponed until April 22 at defendant's request.

has been complied with in this case. Trans-Asiatic's complaint stated the details of its claims against Apex with great particularity. Thus the attachment here does not suffer the flaw of being based on an affidavit containing "only conclusory allegations." *Di-Chem*, 419 U.S. at 607, 95 S.Ct. at 722. The mere possibility of future abuse of the requirement for a particularized complaint is insufficient basis for us to strike down the rule on the facts of this case, especially in light of the proposed revisions of Rule B which have been proposed by the Advisory Committee on the Federal Rules of Civil Procedure. *See* 5 *Benedict on Admiralty*, (Special 1984 Supplement). Those proposed revisions contemplate participation of a judge in ensuring compliance with the particularized complaint requirement.[3] In view of the potential change in the supplemental rules in the near future, we base our decision on the facts of this case, rather than on prophylactic grounds.

Finally, the lack of a bond to protect defendant is not a fatal defect. While such a bond might be a helpful addition to the present rule, we do not read *Di-Chem* and *Mitchell* as mandating such a bond.

■ While the issue is close, we conclude in all the circumstances that the attachment procedure followed in the present case did not violate due process. Trans-Asiatic's particularized complaint and the prompt post-attachment notice and hearing satisfied the minimum due process requirements in this admiralty setting.

3. The proposed revision of Rule B deletes the third sentence of the rule (permitting the clerk to authorize attachment) and substitutes the following language:

> The verified complaint and affidavit shall be reviewed by the court and, if the conditions set forth in this rule appear to exist, an order so stating and authorizing process of attachment and garnishment shall issue. Supplemental process enforcing the court's order may be issued by the clerk upon application without further order of the court. If the plaintiff or his attorney certifies that exigent circumstances make review by the court impracticable, the clerk shall issue a summons and process of attachment and garnishment and the plaintiff shall have the burden on a

*The order of the district court is affirmed and the case is remanded for further proceedings.*

post-attachment hearing under Rule E(4)(f) to show that exigent circumstances existed.

Rule E(4) is also revised by adding a new subdivision (f) which provides that:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules. This subdivision shall have no application to suits for seamen's wages when process is issued upon certification of sufficient cause filed pursuant to Title 46, U.S.C. §§ 603 and 604.

*See* 5 *Benedict on Admiralty* (Special 1984 Supplement).