**CONSOLIDATED RAIL CORPORATION, Plaintiff,**

v.

**Yechiel FRIEDMAN and Colonial Articulos and Generales S.A. de C.V., Defendants.**

**No. 88 Civ. 7197 (TPG).**

United States District Court, S.D. New York.

Sept. 17, 1990.

Order on Motion for Reconsideration Oct. 10, 1990.

Michael J. Siris, New York City, for plaintiff.

Martin S. Kera, Kera & Graubard, New York City, for defendants.

## OPINION

GRIESA, District Judge.

This is an action to recover storage charges and an amount relating to damage to equipment. Suit is brought against two defendants, but only defendant Friedman has been served.

Plaintiff Conrail moves for summary judgment against Friedman and for sanctions. Friedman cross-moves for summary judgment and sanctions, or in the alternative, for leave to file a third-party complaint.

Plaintiff's motion is granted. Friedman's motion is denied.

## FACTS

In 1987 Friedman decided to ship a quantity of various kinds of equipment. He retained a freight consolidator by the name of Keystone Terminals. Keystone made arrangements with Conrail to transport the goods from South Kearny, New Jersey.

The goods were to be loaded by Friedman at his business into a trailer owned by Conrail. The loaded trailer was to be delivered to the Conrail yard in South Kearny. Then, Conrail was to place the trailer on a flatcar for shipment.

On September 29, 1987 Keystone delivered an empty trailer to Friedman for loading. For some reason, Friedman did not request a pickup until approximately October 7. On October 7 Keystone's trucker picked up the trailer. The trailer was then delivered to a trucker's terminal.

The trailer was supposed to be accompanied by full payment and various documents, including the bill of lading provided by Friedman. Keystone had quoted Friedman a rate of $1,875 plus $50 for the trailer drop off. Friedman made payment of only $1,850. Moreover, there was no bill of lading.

From October to December Keystone made numerous calls to Friedman in an attempt to obtain the balance of the freight charges and the necessary bill of lading. Friedman furnished the bill of lading in December, although full payment to Keystone was still not made.

The trailer was delivered to Conrail in South Kearny in January 1988. The trailer was overweight. The maximum weight allowed by the applicable Conrail tariff was 65,000 pounds. The weight of the trailer was excessive by approximately 27,000 pounds. Moreover, its contents were not properly blocked and braced in accordance with railroad requirements. The problem was so severe that the trailer could not be loaded onto a flatcar. Damage to the trailer was caused in the amount of $805.84. In addition, the contents of the trailer included hazardous materials that apparently were not disclosed to Keystone or Conrail.

Conrail advised Keystone of the problem. However, Keystone did not accept further responsibility. Keystone revoked its shipping instructions because the shipment was not suitable for transportation and had not been fully paid for. In addition to $75 owing on the originally quoted price, Friedman owed Keystone $161 for detention charges that accrued during Friedman's delay between September 29 and October 7. This did not include any detention charges for the time the trailer remained at the trucker's terminal until January.

Conrail attempted to reach Friedman to discuss the weight problem and damage to the trailer. After numerous attempts, Conrail finally reached Friedman by telephone and by certified letter to inform him that the trailer had been damaged because of the excessive weight of the load, that Friedman would have to arrange to transfer a portion of its contents into a second trailer in order to meet the tariff weight maximum, and that meanwhile he was responsible for storage charges of $50 a day.

Friedman did not complete the reloading of the equipment into another trailer until March. Even then, Friedman caused further delay by failing to properly block and brace the trailers. Conrail continued to advise Friedman that both trailers were tying up valuable space, making him liable for storage charges of $50 per day. Eventually, Friedman arranged for the proper blocking and bracing of the trailers.

Friedman caused still more delay by providing Conrail with an invalid bill of lading for the second trailer. Friedman alleges he obtained the bill of lading for the second trailer from another freight consolidator named GST Corporation. However, in a letter dated April 11, GST informed Conrail that Friedman had never notified GST that he picked up a trailer, and GST claimed no responsibility for it.

In October 1988 Conrail filed this action, seeking an injunction to compel removal of the trailers from Conrail's property and a monetary award for the detention charges and damages. On December 1 the trailers were removed, leaving only Conrail's claim for storage charges and damages outstanding. The parties agree that the total amount of the storage charges is $30,750. Friedman does not dispute that the amount of the damage to the trailer is $805.84.

Friedman filed an answer on March 28, 1989. At two pretrial conferences, the court warned Friedman and his counsel that they would face sanctions if they continued the litigation without a meritorious defense.

The parties have filed cross-motions for summary judgment and sanctions. Friedman has moved to implead Keystone and GST. Conrail's counsel has submitted an affidavit specifying the amount of Conrail's attorney fees in this litigation. The attorney has spent 73.6 hours and requests compensation at the rate of $90 per hour. When added to disbursements of $195, the total request is $6,819.

## DISCUSSION

Friedman's only defense to the $30,-750 storage charge claim is that there was no contractual relationship between himself and Conrail. He argues that Conrail must look to Keystone, "its shipper." This argument is meritless. The *original* shipper is liable to any carrier who participates in the movement, even if that carrier did not have any direct contractual relationship with the original shipper. *See Southern Pac. Transp. Co. v. Commercial Metals Co.,* 456 U.S. 336, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982).

The bill of lading which governs the question of liability for the storage charges is the bill of lading for the first trailer. Friedman is listed as the shipper. The bill of lading incorporated by reference the Uniform Domestic Bill of Lading which specifically obligates the "consignor" to pay the freight and "all other lawful charges." Friedman was the consignor within the meaning of this language. Friedman is liable to Conrail for the storage charges.

As for the damage to the trailer, it is shown conclusively that Friedman's overloading of the trailer caused this damage. Friedman has not offered any colorable argument as to why he should not be held liable for the $805.64 relating thereto.

Friedman moves to file a third-party complaint against Keystone and GST. He alleges that they breached their shipping contracts, exposing him to liability. A defendant may not file a third-party complaint as of right more than 10 days after serving his answer. Fed.R.Civ.P. 14. Thereafter, he must obtain permission from the court. Whether or not the court grants such permission is left to its sound discretion. *See East Hampton Dewitt Corp. v. State Farm Mut. Auto Ins. Co.,* 490 F.2d 1234, 1246 (2d Cir.1973).

There is no reason to allow Friedman to implead Keystone and GST. He offers no possible explanation of how or why they could be liable for his dilatory acts and his improper loading of the first trailer.

Finally, as previously warned, the court imposes sanctions on Friedman and his counsel. There has never been any reasonable ground in law or fact for de-

fending this case. The court grants Conrail the $6,819 in attorney fees incurred in prosecuting this lawsuit.

Conrail's motion for summary judgment and sanctions is granted. Judgment should be entered for the $30,750 detention charges, the $805.84 trailer damage, and $6,819 sanctions. The latter amount will be assessed not only against defendant Friedman but his attorney.

Friedman's motion is denied in all respects.

The action is dismissed as to defendant Colonial Articulos and Generales S.A. de C.V. since that defendant was never served.

Settle judgment.

## ORDER ON MOTION FOR RECONSIDERATION

■ In the opinion of September 17, 1990, the court imposed sanctions on both defendant Friedman and his attorney. The attorney, Martin S. Kera, has requested reconsideration of the ruling as to himself. He has called attention to the fact that he attempted to have his client settle the case on reasonable terms and that, when this was not done, he was careful to keep the further proceedings in the litigation to a minimum. He has filed a supplemental affidavit dated October 9, 1990 describing his consultation with a lawyer experienced in transportation law regarding possible defenses to plaintiff's claim.

The views expressed in the opinion of September 17 stand—that the conduct of Friedman in the transactions in question was inexcusable and that there was never any valid defense to the action. However, as a matter of discretion, the court will not impose sanctions on the attorney. Mr. Kera was in a difficult position. In retrospect, he should probably have withdrawn from the case. But he was trying, in a manner which seemed proper to him at the time, to perform his professional obligation. The court will not impose sanctions on him.

In all other respects, including the imposition of sanctions on Friedman, the rulings in the September 17 opinion stand.

So Ordered.