ZEUS PROJECTS LIMITED,
et al., Plaintiffs,

v.

PEREZ Y CIA. DE PUERTO RICO,
Inc., et al., Defendants,

Perez Y Cia. De Puerto Rico, Inc.,
et al., Third-party plaintiffs,

v.

Angus Robertson, et al, Third-
party defendants.

No. Civ. 96–2628(HL).

United States District Court,
D. Puerto Rico.

March 31, 1999.

---

Harry A. Ezratty, San Juan, PR, for plaintiffs.

Juan A. Lopez-Conway, Law Office of Paul E. Cal Vesbert, Hector F. Oliveras-Delgado, Pinto-Lugo & Rivera, San Juan, PR, for defendants.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Defendants Pérez y Compañía de Puerto Rico, Inc. ("Pérez") and Phoenix Assurance Company of New York ("Phoenix") have brought third-party claims in this admiralty case. Plaintiffs Zeus Projects Limited ("ZPL") and Lloyd's Underwriters and Certain Insurance Companies at the Institute of London Underwriters ("Underwriters") have moved to dismiss the third-party complaint. Third-party defendants Angus Robertson, David R. Pedrick, and American Bureau of Shipping ("ABS") have also moved to dismiss. ZPL is a United Kingdom company. It was the owner of the *Zeus,* a 150–foot sailing yacht. Underwriters were the insurers of the vessel. Pérez is a Puerto Rico company which manages a shipyard and engages in, among other things, ship repair. Phoenix is its insurance company.[1] Robert-

---

1. In the interest of conciseness, the Court will refer to Pérez and Phoenix collectively as "Pér-

son is a citizen of the United Kingdom. He was the chief executive officer of ZPL during the incidents which give rise to this controversy. Pedrick is a naval architect; he resides in Rhode Island. ABS is a corporation located outside of Puerto Rico. This case is before the Court pursuant to its admiralty jurisdiction. *See* 28 U.S.C.A. § 1333 (West 1993).

This case arises out of work done on the *Zeus.* Plaintiffs allege that in December 1995, ZPL contracted Pérez to haul out the vessel, place it in dry dock, and do maintenance, cleaning, and repair work on it; that ZPL explained to Pérez how to block or support the vessel while it was in dry dock; but that when the *Zeus* was hauled into dry dock, Pérez failed to provide any support forward or aft of the keel or on the sides of the hull, as had been instructed. As a result, Plaintiffs allege, the *Zeus* sat on its keel without any blocking and its structure was subject to damaging stresses. Plaintiffs claim that the *Zeus'* hull and structure have been bent and distorted due to this failure to properly block the vessel. They claim that Pérez breached its contract, breached its warranty of workmanlike performance, and was grossly negligent.

On March 20, 1997, Pérez filed an answer, in which it denied that its work constituted a breach or negligence.[2] In its affirmative defenses it alleged that the *Zeus'* damages were caused by pre-existing conditions at the time it was hauled into dry dock and that these pre-existing conditions were caused by ZPL, Robertson, and any naval architects or other technicians that had worked on the vessel. Two months later, on May 20, 1997, Pérez filed a third-party complaint.[3] Pérez did not seek leave of the Court to file its claim. The third-party complaint subsequently was amended and named as third-party defendants Robertson, Pedrick, ABS, Robert E. Derecktor, Inc., Gunther Dietz, Consolidated Yacht Corporation, and High

Modulus.[4] Pérez alleges that the third-party defendants caused the damage to the *Zeus.*

The other parties to the case have reacted to this third-party complaint with a flurry of motions. Plaintiffs move to dismiss it on the grounds that Pérez failed to comply with the requirements of Federal Rule 14(a) for filing a third-party claim. ABS argues that the complaint fails to state a claim for which relief can be granted. Robertson and Pedrick each argue that the claims should be dismissed because this Court lacks personal jurisdiction over them. Pérez has opposed all these motions. For the reasons set forth below, the Court grants the motions of ABS and Pedrick, denies Robertson's motion, and grants in part and denies in part Plaintiffs' motion.

## DISCUSSION

### 1 ABS' Motion to dismiss

ABS moves for dismissal pursuant to Federal Rule 12(b)(6) and argues that the third-party complaint fails to state a claim for which relief could be granted. In ruling on a Rule 12(b)(6) motion to dismiss, a court must accept all well-pled factual averments as true and must draw all reasonable inferences in the plaintiffs favor. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n,* 37 F.3d 12, 14 (1st Cir.1994). A court should not dismiss a complaint for failure to state a claim unless it is clear that the plaintiff will be unable to prove any set of facts which would entitle him to recovery. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Miranda v. Ponce Federal Bank,* 948 F.2d 41, 44 (1st Cir.1991). This deferential standard is not a "toothless tiger." *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir.1996). The court is not obliged to credit a claimant's "bald assertions" or legal conclusions. *Abbott v. United*

ez."

2. Docket no. 8.

3. Docket no. 14.

4. Docket no. 29. Pérez and Phoenix have since dismissed the claims against Derecktor and Consolidated Yacht Corporation. *See* docket nos. 150, 151, & 163. Dietz and High Modulus have yet to be served or make an appearance in this case.

*States,* 144 F.3d 1, 2 (1st Cir.1998); *Glassman v. Computervision Corp.,* 90 F.3d 617, 628 (1st Cir.1996).

In the present case, Pérez makes the following specific allegations as to ABS: it is a corporation domiciled outside of Puerto Rico and it participated as a classification or certification consultant in modification work done on the *Zeus.* Docket no. 29, at ¶¶ 11 & 22. Pérez also alleges that ZPL and the third-party defendants made substantial modifications to the vessel; that the *Zeus'* damages were caused by its pre-existing condition; and that the damages were caused by the negligence of each third-party defendant, including ABS. *Id.* at ¶¶ 17, 15, & 25. Pérez further claims that the vessel was not "stanch, strong and seaworthy as the result of modifications, additions and/or changes designed and/or approved and/or made by the third-party defendants" to the vessel's design, construction, structural components, engines, equipment, machinery, appurtenances, and materials. *Id.* at ¶¶ 26–31. This condition, Pérez alleges, was caused by the acts of the third-party defendants. *Id.* ¶ 32. These allegations are heavy on conclusory allegations, but fatally light on specifics. Pérez repeatedly claims that the negligent acts of the third-party defendants caused the damage. However, nowhere does Pérez specify any act by ABS that could have caused the claimed damages. Absent allegations of specific conduct by ABS that caused damage to the *Zeus,* the third-party complaint against ABS must be dismissed for failure to state a claim.

### 2 Pedrick's Motion to dismiss for lack of personal jurisdiction

In the third-party complaint Pérez alleges that Pedrick was the naval architect who worked on the modification of the *Zeus* and, for the same general litany of allegations as those made against ABS, Pérez claims that Pedrick too is liable for the damages. Pedrick argues that he is not subject to the personal jurisdiction of this Court. In support of his motion, he has submitted a sworn declaration in which he states that he has never conducted business in Puerto Rico and the only time he was present here was on a trip in 1991 when he passed through the airport.[5] Pérez has countered with the following evidence: a brochure and a magazine article mentioning Pedrick as the naval architect for the vessel[6]; letters written on ZPL stationery which lists Pedrick as the project's design consultant[7]; and the transcript of a promotional video on the vessel which mentions that Pedrick designed it.[8] Pérez claims that this evidence indicates that Pedrick was part of something that Pérez calls "Team *Zeus*" and that therefore when the vessel was brought to Puerto Rico, Pedrick was in effect transacting business here. In support of its argument, Pérez has also submitted Pedrick's answers to interrogatories in which he states that he has never been an employee of ZPL; that he was an independent contractor who did work on the vessel while he was in Rhode Island and Florida; that ZPL unilaterally decided to use his name in its promotional materials and on its letterhead, but that he has received no compensation from ZPL for the use of his name; that he has never solicited business in Puerto Rico, never done business in Puerto Rico, never received money from Puerto Rico, and never worked on a vessel that he knew was going to sail to Puerto Rico.[9]

A federal court must have personal jurisdiction over a third-party defendant before it may adjudicate the third-party claim. 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1445, at 344 (2d ed.1990). The plaintiff always has the burden of demonstrating that the forum court has personal jurisdiction over the defendant. *Rodriguez v. Fullerton Tires Corp.,* 115 F.3d 81, 83 (1st Cir.1997). In reaching a determination on this issue, a court has a number of standards

---

5. Docket no. 39.

6. Docket no. 59, exhibits A & B.

7. Docket no. 59, exhibit C; docket no. 153, exhibits 5—11.

8. Docket no. 153, exhibit 4.

9. Docket no. 153, exhibit 3.

by which it may review the record to determine whether the plaintiff has met its burden. *See Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 674–78 (1st Cir.1992). If the court holds an evidentiary hearing, one of two standards applies: either the plaintiff must establish a likelihood of the existence of all facts necessary to establish personal jurisdiction or the plaintiff must show by a preponderance of the evidence the facts which support personal jurisdiction. *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145–47 (1st Cir.1995); *Mohajer v. Monique Fashions*, 945 F.Supp. 23, 26 (D.P.R. 1996).

A third method often used at the early stages of litigation is the prima facie standard. *Rodriguez*, 115 F.3d at 83–84. This is the least taxing of the standards; under it a plaintiff must make a showing as to each fact required to satisfy both the local forum's long-arm statute and the Constitution's due process clause. *Id.* The district court does not sit as a factfinder; rather, "it ascertains only whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction." *Id.* at 84. To make a prima facie showing, the plaintiff may not rest on unsupported allegations in the pleadings; instead, it must adduce evidence of specific facts which establish personal jurisdiction. *Foster–Miller*, 46 F.3d at 145; *Boit*, 967 F.2d at 675. In the case before the Court, no party has requested an evidentiary hearing, and the litigation is in its early stages. Moreover, the First Circuit has ruled that unless the district court otherwise informs the parties, it is to be understood that the prima facie standard will be used. *See Rodriguez*, 115 F.3d at 84. Accordingly, the Court will employ the prima facie standard in ruling on the motion to dismiss.

This is an admiralty case. As such, the personal jurisdiction analysis includes a twist not present in diversity cases, although ultimately there is no practical difference in the way in which the Court proceeds towards its determination. In the context of personal jurisdiction in admiralty cases, the First Circuit has held that "due process only requires sufficient contacts within the United States as a whole" and "the limits on a state's power over non-resident defendants do not apply to a federal court sitting in admiralty in that state." *Trans–Asiatic Oil Ltd. S.A. v. Apex Oil Co.*, 743 F.2d 956, 959 (1st Cir.1984). At first blush, such broad language would seem to indicate that any individual located anywhere in the United States may be hauled before this Court in an admiralty case. A bit of exposition on this area, however, is necessary before proceeding to such an expansive conclusion on the Court's power.

▮ In cases where a federal court's subject matter jurisdiction is based on admiralty or a federal question, it is true that the court's jurisdiction over parties is national in scope. *United Elec. Workers v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992); *Trans–Asiatic Oil*, 743 F.2d at 959. The limits on the court's personal jurisdiction are based in the Due Process clause of the Fifth Amendment, not in the Fourteenth Amendment as is true for diversity cases. *163 Pleasant Street*, 960 F.2d at 1085; *Lorelei Corp. v. County of Guadalupe*, 940 F.2d 717, 719 (1st Cir.1991); *Toledo v. Ayerst–Wyeth Pharmaceutical, Inc.*, 852 F.Supp. 91, 102 (D.P.R.1993); *Colon v. Gulf Trading Co.*, 609 F.Supp. 1469, 1472 (D.P.R.1985). When the Fifth Amendment is the controlling guideline, due process provides that a court will have personal jurisdiction over an individual who has the sufficient contacts with the United States as a whole rather than with a particular forum state or territory. *163 Pleasant Street*, 960 F.2d at 1085; *Trans–Asiatic Oil*, 743 F.2d at 959.

▮ Notwithstanding the scope of a federal court's personal jurisdiction in such cases, the court's power over individuals is subject to an important limitation. This limitation takes the form of service of process. Service of process and personal jurisdiction are closely related; they are, however, distinct concepts. *163 Pleasant Street*, 960 F.2d at 1085; *Lorelei*, 940 F.2d at 719–20 n. 1. Thus, while it may be true that a court faced with an admiralty or federal question has personal jurisdiction over any defendant located in the United States, it is also true that the defendant must be served pursuant to a federal statute or Civil Rule. *163 Pleasant Street*, 960 F.2d at 1085; *Lorelei*, 940 F.2d at 719–20. Service is proper on an individual

located outside the forum when a federal statute authorizes service or when that individual would be subject to the jurisdiction of a state court in the state where the federal court is located. Fed.R.Civ.P. 4(k)(1); *Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1201 (7th Cir.1997); *163 Pleasant Street,* 960 F.2d at 1085–86. There is no federal statute providing for service on defendants in admiralty cases. *Colon,* 609 F.Supp. at 1475. Accordingly, it is necessary to determine whether Pedrick would be subject to the jurisdiction of a local Puerto Rico court. To make this determination, the Court must look to Puerto Rico's long-arm statute, P.R. Laws Ann. tit. 32 App. III R.4.7 (1983). *See Janmark,* 132 F.3d at 1201–02; *163 Pleasant Street,* 960 F.2d at 1085–86; *Lorelei,* 940 F.2d at 720; *see also Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44, 50 (2nd Cir.1991) (To determine personal jurisdiction in admiralty cases, look to the forum state's long-arm statute); *I & M Rail Link v. Northstar Navigation,* 21 F.Supp.2d 849, 852 (N.D.Ill.1998) (same); *Loberiza v. Calluna Maritime Corp.,* 781 F.Supp. 1028, 1030 (S.D.N.Y.1992) (same).

Thus, to proceed with its analysis, the Court returns to the familiar realm of minimum contacts, the long-arm statute, and the Fourteenth Amendment. The question of whether Pedrick is subject to Puerto Rico's long-arm statute depends on whether Pérez can show that Pedrick has sufficient minimum contacts with Puerto Rico. *See Pritzker v. Yari,* 42 F.3d 53, 60 (1st Cir.1994). The First Circuit has developed the following three-part test for making this determination:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Id.* at 60–61 (quoting *163 Pleasant Street,* 960 F.2d at 1089). This test for minimum contacts is "highly idiosyncratic" and must be made on a case-by-case basis. *Id.* at 60.

The first two parts of the test-relatedness and purposeful availment-are both aspects of demonstrating minimum contacts pursuant to *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See Nowak v. Tak How Investments, Ltd.,* 94 F.3d 708, 713 (1st Cir.1996). The relatedness test focuses on the nexus between the defendant's contact with the forum and the plaintiff's cause of action. *Id.* at 714; *Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir. 1995). This test ensures that the causation element is in the forefront of the court's due process analysis. *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 207 (1st Cir.1994). Generally, there should be a proximate cause relation between the defendant's conduct and the plaintiff's claim. *Nowak,* 94 F.3d at 713–15. The relatedness requirement is not satisfied if the plaintiff's cause of action arises out of a general relationship between the parties. *Sawtelle,* 70 F.3d at 1389. The action must arise directly out of the defendant's specific contacts with the forum state. *Id.*

The second part of the test is whether the defendant's in-state contacts constitute a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that forum's laws and making the defendant's involuntary presence before the courts there foreseeable. *163 Pleasant Street,* 960 F.2d at 1089. The purposeful availment prong is meant to ensure that personal jurisdiction is not based only upon a defendant's random or isolated contacts with the forum. *Sawtelle,* 70 F.3d at 1391. The court's exercise of jurisdiction must be "fair, just, or reasonable." *Nowak,* 94 F.3d at 716 (quoting *Sawtelle,* 70 F.3d at 1391 (quoting *Rush v. Savchuk,* 444 U.S. 320, 329, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980))) (internal quotations omitted). The Court should focus on voluntariness and foreseeability. *Id.* at 716. The defendant's contacts with the forum should be voluntary and not based on the unilateral actions of a third party. *Id.* Additionally, the nature of these contacts must be such that defendant could reasonably anticipate the

possibility of being subject to a lawsuit there. *Id.*

■ In the present case, the evidence does not satisfy the relatedness or purposeful availment requirements. In his sworn declaration and answer to interrogatories, Pedrick states that he has never conducted business in Puerto Rico, received money from Puerto Rico, or solicited business in Puerto Rico. He further states in his answer to interrogatories that he was only an independent contractor-and not an employee-of ZPL; that the work he did for ZPL was done in Rhode Island and Florida; that ZPL unilaterally chose to use his name in its promotional materials for the *Zeus;* and that he has never received any payment for the use of his name. Pérez challenges the veracity of these answers to interrogatories and argues that Pedrick has adduced no evidence to support them. The Court rejects this challenge for a number of reasons. First, Pérez was the party that introduced the answers to the interrogatories into the record. It may not now ask the Court to ignore this evidence that *Pérez itself* has presented to the Court. If this evidence is unreliable or inadmissible, then Pérez should not have presented it in the first place. Second, the burden lies with Pérez. *See Rodriguez,* 115 F.3d at 83. Pedrick does not have the burden to support his own statements regarding the level of his involvement in the modification of the *Zeus.* Rather, Pérez has the burden of adducing some evidence to refute Pedrick's statements and to show that Pedrick has in fact transacted business in Puerto Rico and that he was in fact a member of ZPL or "Team *Zeus,*" and was not merely a contractor. Pérez has failed to adduce any such evidence.[10]

■ It is Pérez' burden to show that Pedrick has had the minimum contacts with Puerto Rico. To establish these contacts, Pérez argues that Pedrick introduced the vessel into the stream of commerce and should have foreseen that it would arrive in Puerto Rico.

This argument is flawed. First, Pedrick states in his answer to the interrogatories that he has never worked on a vessel knowing that it would subsequently be taken to Puerto Rico and that he has no control over vessels after he has done work on them. Pérez has presented no evidence to contradict this answer. More damaging to Pérez' argument, the First Circuit has rejected the reliance on a stream of commerce theory as a means to establish personal jurisdiction. *See Rodriguez,* 115 F.3d at 85; *Boit,* 967 F.2d at 681–83; *Dalmau Rodriguez v. Hughes Aircraft Co.,* 781 F.2d 9, 14–15 (1st Cir.1986). This theory cannot be used to establish the voluntariness prong of the relatedness test. *Sawtelle,* 70 F.3d at 1392–93; *Branch Metal Processing, Inc. v. Boston Edison Co.,* 952 F.Supp. 893, 907 (D.R.I.1996). The mere knowledge that the stream of commerce might carry a product into Puerto Rico is insufficient to establish a purposeful availment. *Rodriguez,* 115 F.3d at 85. Thus, Pérez has failed to satisfy either the relatedness or purposeful availment parts of the test for minimum contacts.

■ The third and last part of the test requires the plaintiff to demonstrate that the exercise of the court's jurisdiction would be reasonable in light of certain "gestalt factors." *163 Pleasant Street,* 960 F.2d at 1089. The gestalt factors are made up of the following five criteria:

(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Id.* at 1088. These factors assist the court in achieving substantial justice. *Ticketmaster–New York, Inc.,* 26 F.3d at 209. This reason-

---

10. Pérez makes much of the fact that Pedrick's name appeared on ZPL's letterhead. Pedrick, however, has stated that he did not authorize the use of his name, and Pérez has proffered no evidence to contradict this statement. The unauthorized use of Pedrick's name on these letters does not establish minimum contacts. *See Mo-* *hajer v. Monique Fashions,* 945 F.Supp. 23, 27 n. 9 (D.P.R.1996) (The listing of non-Puerto Rico residence's name in program books for trade shows in Puerto Rico was given little weight in establishing minimum contacts because plaintiff failed to show that the out-of-state resident was responsible for its name appearing in the books).

ableness test, however, is not a mechanical one. *Sawtelle,* 70 F.3d at 1394. If a plaintiff has failed to establish the defendant's minimum contacts with the forum, the court need not address the gestalt factors. *Id.; Terzano v. PFC,* 986 F.Supp. 706, 712 (D.P.R. 1997); *Rodriguez v. Fullerton Tires Corp.,* 937 F.Supp. 122, 129 (D.P.R.1996), *aff'd,* 115 F.3d 81 (1st Cir.1997). As discussed above, Pérez has failed to satisfy the relatedness and purposeful availment tests. Accordingly, it is not necessary for the Court to do a gestalt factors analysis. Pedrick's motion to dismiss is hereby granted.

### 3 Robertson's Motion to dismiss for lack of personal jurisdiction

██ Robertson also moves for dismissal on the grounds that this Court lacks jurisdiction over him. In support of his motion he has submitted a sworn declaration in which he states that he has never transacted business, had an automobile accident, or owned real property in Puerto Rico.[11] In response, Pérez has submitted a letter signed by Wayne Cook, the captain of the *Zeus,* in which he describes the incident in Pérez' shipyard which ZPL claims caused the damage to the vessel. In the letter Cook states that he had the "back-up support" of Robertson, the owner of the vessel.[12] Pérez has also submitted the copy of a personal check from Robertson to Pérez to pay for the repairs done on the vessel.[13] Furthermore, insurance policies on the *Zeus* list both ZPL and Robertson as insured parties under the policy.[14]

██ The same analysis used to determine whether this Court had jurisdiction over Pedrick is applicable to Robertson.[15] That is, Pérez must establish that Robertson has had sufficient minimum contacts with Puerto Rico to make him subject to the jurisdiction of a local court, as provided in Puerto Rico's long-arm statute. Under that statute a local court may take jurisdiction over a person for a claim which has arisen out of that person's transacting business, either personally or through an agent, in Puerto Rico. P.R. Laws Ann. tit. 32 App. III R.4.7(a)(1). In the present case there is evidence-the letter by Cook and the insurance policies—that Robertson had an ownership interest in the *Zeus.* There is also evidence that Robertson personally paid Pérez for the work it did on the vessel. It appears that he was involved in the decision to send a vessel in which he had an interest to Puerto Rico for repair work. In a claim based in contract, the court's relatedness inquiry should be whether the defendant's activities in the forum were instrumental in the contract's formation. *Massachusetts Sch. of Law v. Am. Bar Ass'n,* 142 F.3d 26, 35 (1st Cir.1998). The evidence here is sufficient to show that Robertson's conduct was an essential part of the contract. He paid Pérez for the work it did on a vessel in which he had an interest. Additionally, Cook's statement indicates that his actions in Puerto Rico were supported by Robertson. Thus, the relatedness prong of the minimum contacts test is satisfied.

This same evidence is also sufficient to satisfy the purposeful availment prong. At this stage, the Court should focus on voluntariness and foreseeability. *Nowak,* 94 F.3d at 716. It appears that Robertson's conduct was voluntary. There is no evidence that his contacts with Puerto Rico were caused by the unilateral actions of a third party. Additionally, as discussed above, the evidence is sufficient to show that Robertson's conduct was instrumental in the formation of the contract. Therefore, Robertson could rea-

11.  Docket no. 79.

12.  Docket no. 152, exhibit 2.

13.  Docket no. 152, exhibit 6.

14.  Docket no. 152, exhibit 7; docket no. 164, exhibits 6 & 7.

15.  Robertson is a citizen of the United Kingdom and claims England as his place of residence. *See* Docket no. 164, exhibit 3. A nonresident of the United States who has sufficient contact with the United States as a whole to justify the application of federal law but who does not have sufficient contact with any single state to support jurisdiction under a state long-arm statute may be served pursuant to Federal Rule 4(k)(2). 4A Wright & Miller *Federal Practice and Procedure* § 1124, at 79 (2d ed. Pocket part 1999). Robertson admits that he has sufficient contacts with Florida to make him subject to that state's long-arm statute. *See* docket no. 72, at 3 n. 2. Therefore, Rule 4(k)(2) is not applicable.

sonably anticipate the possibility of his being subject to a lawsuit in Puerto Rico over that contract. *See id.*

The final prong of the analysis is to determine whether, under the gestalt factors, the Court's exercise of its jurisdiction over Robertson would be reasonable. The first factor—the burden on the defendant to appear in the forum-allows the court to prevent harassing litigation. *Id.* at 718. It will almost always be burdensome for a defendant to defend itself in a foreign jurisdiction. *Pritzker*, 42 F.3d at 64. In order for this factor to weigh against the court's jurisdiction, therefore, it must be shown that the exercise of jurisdiction is "onerous in a special, unusual, or other constitutionally significant way." *Id.* The second factor examines the forum's interest in resolving the dispute. *163 Pleasant Street*, 960 F.2d at 1088. The purpose of this factor is not to compare the forum's interest with that of another jurisdiction, but to determine the extent to which the forum has any interest at all. *Foster–Miller*, 46 F.3d at 151. The third gestalt factor is the plaintiff's interest in obtaining effective and convenient relief. *163 Pleasant Street*, 960 F.2d at 1088. The fourth factor is the judicial system's interest in obtaining the most efficient resolution of the controversy. *Id.* The final gestalt factor is the common interests of all involved sovereigns in promoting substantive social policies. *Id.* A prominent policy consideration for this factor is the state's ability to provide its residents with a convenient forum to redress injuries caused by foreign actors. *Sawtelle*, 70 F.3d at 1395.

In the present case, these factors support the Court's exercise of jurisdiction over Robertson for one basic overriding reason: be-cause Pérez' claim is a third-party complaint, this Court will be trying the core controversy between ZPL and Pérez regardless. The addition of the third-party claim against Robertson should have little effect on any interested party or forum. Robertson was the chief executive officer of ZPL during the time relevant to this dispute. It is therefore reasonable to assume that he will be a witness. In fact, in an answer to interrogatories, ZPL has listed him as a person with personal knowledge of the facts alleged in the complaint.[16] Thus, with regard to the first gestalt factor, it is difficult to see how he would be burdened by being forced to appear before this Court as a third-party defendant when he was already going to be appearing here as a witness in the same case. As to the second factor-the forum's interest in adjudicating the dispute-Pérez claims that it was injured in Puerto Rico and the repair work that is at the center of this dispute was performed here. Accordingly, Puerto Rico has an interest in the exercise of jurisdiction over Robertson. Lastly, both Pérez' interest in obtaining convenient relief and the judicial system's interest in efficiently resolving this dispute favor the exercise of this Court's jurisdiction. Both of these interests would best be satisfied by this Court's exercise of jurisdiction over Robertson in the same proceedings in which ZPL's claim against Pérez is being brought. Based on all of the above, the Court holds that under the gestalt factors, the exercise of jurisdiction over Robertson is reasonable.[17] And because Pérez has succeeded in satisfying the relatedness and purposeful availment prongs, the Court denies Robertson's motion to dismiss.[18]

16. Docket no. 152, exhibit 8.

17. The final gestalt factor requires a consideration of the common interests of all involved sovereigns in promoting substantive social policies. *163 Pleasant Street*, 960 F.2d at 1088. In the present case, the parties have either ignored or mentioned only in passing this factor. The Court will therefore treat it as favoring neither side. At any rate, even if this factor supported Robertson's position, the balance of the other four factors which all favor the exercise of jurisdiction would outweigh this last factor.

18. In his motion to dismiss, Robertson also claims that he was not properly served. Pérez served Robertson by publication. He claims that Pérez did not comply with the requirements of Puerto Rico Rule of Civil Procedure 4.5 on service by publication. *See* P.R. Laws Ann. tit. 32 App. III R. 4.5 (1983). Specifically, Robertson argues that Pérez in its motion to serve by publication did not adequately demonstrate that Robertson could not be located in Puerto Rico. The Court disagrees. Pérez has filed an affidavit in which its president indicated that sufficient steps were taken to locate Robertson. *See* docket no. 19, exhibit 1. Additionally, the gist of Robertson's argument on personal jurisdiction is to disavow his connection with or presence in Puerto Rico. It seems odd that he now argues that Pérez should have done a better job of establishing that

### 4. Plaintiffs' Motion to strike the third-party complaint

Pérez' third-party complaint has been attacked on an alternative grounds. Plaintiffs move for its dismissal because the third-party claim is untimely under Rule 14, the claim is clearly not meritorious, and allowing the claim to proceed would delay and prejudice the resolution of their claim. Pérez filed its answer on March 20, 1997.[19] On May 20, 1997, it filed a third-party complaint, without seeking leave of court to do so.[20] A defendant filing a third-party claim may do so automatically within ten days of filing the answer; otherwise, it must first seek leave of the court. Fed.R.Civ.P. 14(a). Here, Pérez failed to comply with the requirements under Rule 14(a) for seeking leave to file its claim. The decision on whether to allow a third-party claim lies within the sound discretion of the trial court. *Consolidated Rail Corp. v. Friedman*, 758 F.Supp. 128, 130 (S.D.N.Y. 1990); *United States v. Gov't Dev. Bank*, 725 F.Supp. 96, 105 (D.P.R.1989). In exercising this discretion, a court should consider the following factors: whether the third-party claim would prejudice the plaintiff; the risk of unduly complicating the issues or unnecessarily delaying the resolution of the controversy; the timeliness of the motion to implead; the merit of the third-party claim; and any additional expenses the claim may be impose on the parties. *Local 144, Hotel, Hosp., Nursing Home and Allied Services Union v. C.N.H. Management Assoc., Inc.*, 741 F.Supp. 415, 419 (S.D.N.Y.1990); *Gov't Dev. Bank*, 725 F.Supp. at 105. Leave to file a third-party complaint should be denied if the claim will disadvantage or delay the original action or if the third-party claim lacks merit. *Venuti v. Riordan*, 702 F.2d 6, 9 (1st Cir.1983); *F.D.I.C. v. diStefano*, 839 F.Supp. 110, 120 (D.R.I.1993); *see also Lopez de Robinson v. United States*, 162 F.R.D. 256, 260 (D.P.R.1995) (Denying the third-party complaint because the claim was meritless, would delay the litigation, and would impose inordinate costs).

In the present case, Pérez' third-party claim threatens to unduly delay the resolution of this case. In fact, it has already done so with the motions to dismiss that it has prompted. Two of the third-party defendants-Gunter Dietz and High Modulus-have not even been served yet. Their service, discovery, and possible dispositive motions present the prospect of additional delays. If the third-party complaint is allowed to proceed, other delays and complications will follow, as they inevitably do when additional parties are added. Moreover, this cause of action presents what should be a straightforward issue: whether Pérez' repair work on the *Zeus* caused damage to it. The introduction of a third-party claim, however, unnecessarily complicates this question. The refusal to allow these claims would not harm Pérez because it has already plead in its affirmative defenses what it seeks to claim in its third-party complaint: that the *Zeus'* damages were caused by conditions that were already present when it was brought to Pérez' shipyard. Thus, the condition of the *Zeus* before Pérez worked on it will be an issue before this Court. On the other hand, if the Court were to allow Pérez' third-party claim, Plaintiffs would be harmed by the inevitable delays and complications the claim would cause. Additionally, as discussed above, Pérez' complaint fails to state a claim as against ABS. Thus, it is not at all clear that Pérez even has a meritorious claim, at least as against ABS.

The Court, thus, finds that because of the risks of undue delay and unnecessary complication and because of the failure to state a claim against ABS, the third-party complaint should not be allowed to proceed. The Court makes this ruling as to all third-party defendants with the exception of Robertson. He was the chief executive officer of ZPL when Pérez worked on the *Zeus*. As discussed in this opinion's ruling in section 3 above, Plain-

---

he was absent from Puerto Rico. Robertson's argument on this point is also denied.

**19.** Docket no. 8.

**20.** Docket no. 14. Pérez subsequently filed an amended third-party complaint. Docket no. 29.

Pérez did seek leave to amend its third-party claim, which was granted by the judge to whom this case was originally assigned. Docket no. 28. Pérez did not, however, ever seek leave to file its original third-party complaint.

tiffs have named Robertson as someone with personal knowledge of the facts of this controversy. He was at the center of this controversy. It appears likely that he will be a witness at trial. Accordingly, the concerns regarding delay and complication are not present if the third-party claim against him is allowed to proceed. *Cf. Gov't Dev. Bank,* 725 F.Supp. at 106 (The inclusion of a third-party defendant would not prejudice any parties where the third-party defendant acted as an agent for the plaintiff and initiated the contractual relationship which was at the core of the dispute). Therefore, the Court grants Plaintiffs' motion to dismiss the third-party complaint as to all third-party defendants except Robertson.[21]

WHEREFORE, the Court grants ABS' motion to dismiss (docket no. 38), grants Pedrick's motion to dismiss (docket no. 39), denies Robertson's motion to dismiss (docket no. 72), and grants in part and denies in part Plaintiffs' motion to dismiss (docket no. 34).

**IT IS SO ORDERED.**

---

**21.** Because the Court has already granted in sections 1 and 2 of this opinion the motions to dismiss filed by Pedrick and ABS, this section constitutes an alternative grounds for dismissing the claims against them.