Brenda Lee ARROYO LÓPEZ,
et al., Plaintiffs,

v.

HOSPITAL DR. DOMINGUEZ,
INC., et al., Defendants.

Civil No. 06–1979 (ADC).

United States District Court,
D. Puerto Rico.

Aug. 14, 2009.

Keith A. Graffam, Graffam & Biaggi, San Juan, PR, for Plaintiffs.

Juan M. Masini–Soler, Juan Masini Soler Law Office, Jaime E. Morales–Morales, Morales Morales Law Offices, Sigrid Lopez–Gonzalez, Sigrid Lopez Gonzalez Law Offices, Jorge J. Lopez–Lopez, Otero & Lopez, LLP, Jose A. Miranda–Daleccio, Miranda Cardenas & Cordova, Maria G. Carrion–Christiansen, San Juan, PR, for Defendants.

### OPINION AND ORDER

AIDA M. DELGADO–COLON, District Judge.

Plaintiffs, Brenda Lee Arroyo–López and Jorge Guadalupe–Toledo ("plaintiffs"), filed this lawsuit on September 29, 2006, alleging claims under the Emergency Medical Treatment and Active Labor Act ("EMTALA") and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann., tit. 31 §§ 5141 and 5142. **Docket No. 1.** Plaintiffs filed amended complaints on March 30, 2007 and May 5, 2008. **Docket Nos. 20, 53.** Thereafter, defendants Dr. Bolivar Burgos, Dr. Angel Rodríguez and Grupo Médico de Emergencias del Este (collectively, "defendants" or "defendants/third-party plaintiffs") filed a third-party complaint against numerous entities including HIMA Hospital–Caguas ("HIMA"). **Docket No. 73.** Before the court are HIMA's original and supplemental motions to dismiss or strike the third-party complaint and to preclude the use of any

expert by defendants, and defendants' response in opposition. **Docket Nos. 75, 77, 83.** For the reasons set forth below, HIMA's motion is **DENIED.**

## I. Factual and Procedural History

On September 19 and 22 of 2005, plaintiffs took their then two (2) year old daughter, Crystal Guadalupe–Arroyo ("Crystal" or "decedent"), to Dr. Bolivar–Burgos because she was feeling sick. **Docket No. 53 at ¶¶ 14–15.** On both occasions, Dr. Bolivar–Burgos sent Crystal home with medication for her symptoms. *Id.* Thereafter, plaintiffs took Crystal to the Emergency Room of HIMA Hospital–Humacao where she was diagnosed with bronchopneumonia with persistent fever, extensive nasal secretions, tachycardia, difficulty in breathing and other respiratory problems. Crystal was transferred to Hospital Dr. Domínguez because no beds were available at HIMA Hospital–Humacao. *Id.* at ¶ 15. Approximately three hours after this transfer, and while suffering from diarrhea, tachycardia and respiratory problems, Crystal was seen by a doctor, and without basic diagnostic tests was diagnosed with acute gastroenteritis and dehydration and "dumped" from the hospital. *Id.* at ¶¶ 18–19. Plaintiffs then returned to Dr. Bolivar–Burgos, who sent Crystal home with Pedialite. *Id.* at ¶ 24. Later that night, Crystal's parents took Crystal to the Emergency Room of Ryder Hospital. There Crystal was diagnosed with bronchopneumonia and transferred to HIMA Hospital–Caguas, where she arrived in critical condition. *Id.* at ¶¶ 25–26. Crystal's critical condition continued deteriorating until she died on October 1, 2005. *Id.* at ¶ 27.

Plaintiffs brought suit against defendants, asserting that defendants' failure to treat and/or stabilize Crystal, in violation of EMTALA, caused, or at least contributed to, her death. Defendants' proposed third-party complaint seeks to implead HIMA on the ground that it will be liable to defendants, should defendants be found to be liable to plaintiffs. **Docket No. 73 at ¶¶ 19–22.** Specifically, the proposed third-party complaint asserts claims against HIMA-Caguas for

negligent medical treatment under Article 1802 of the Civil Code of Puerto Rico. *Id.*

## II. Motion to Strike or Dismiss a Rule 14(a) claim.

The impleading of parties through a third-party complaint is governed by Rule 14 of the Federal Rules of Civil Procedure, which provides, in pertinent part:

A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than ten (10) days after serving its original answer. Fed. R.Civ.P. 14(a)(1).

 "Any party may move to strike the third-party claim." Fed.R.Civ.P. 14(a)(4). A third-party plaintiff must allege a direct line of liability between itself and the third-party defendant independent of that between the original plaintiff and defendant. *Lopez de Robinson v. United States,* 162 F.R.D. 256, 258 (D.P.R.1995). The claim that the third-party plaintiff asserts must be derivative of some claim set forth in the plaintiff's complaint. *United States v. Gov't Dev. Bank,* 132 F.R.D. 129, 131 (D.P.R.1990); *see also Metro. Life Ins. Co. v. Ditmore,* 729 F.2d 1, 9 (1st Cir.1984) ("Third party claims [are] by definition logically dependent on the resolution of the original suit"). Thus, in determining whether a third-party complaint was properly brought under Rule 14, a court looks to whether the pleadings provide a basis for a third-party defendant's liability to the defendant/third-party plaintiff. If the claim asserted in the third-party complaint is "separate and independent" from the main action, impleader must be denied. 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1446 (Supp.1989) (citations omitted).

## III. Discussion

 EMTALA provides a cause of action for injured patients against a participating hospital. *Torres Nieves v. Hospital Metropolitano,* 998 F.Supp. 127, 132–33 (D.P.R. 1998). Compliance with EMTALA requires that a hospital: (1) conduct an appropriate medical screening of all persons who come to its emergency room seeking medical attention, and (2) stabilize the patient before transferring her, unless transferring the patient to another facility can be accomplished with relative safety. *Id.* at 133. The section of the statute that provides a cause of action for injured patients states as follows:

Any individual who suffers personal harm as a direct violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate. 42 U.S.C. § 1395dd(d)(2)(A); see also *Torres Nieves,* 998 F.Supp. at 133 n. 3.

The specific cause of action authorized by EMTALA is defined by state substantive law. *Vasquez Morales v. Estado Libre Asociado de P.R.,* 967 F.Supp. 42, 46 (D.P.R. 1996). In the instant case, Puerto Rico law applies, and the relevant provision is Article 1802 of the Civil Code of Puerto Rico, which states:

A person who by act or omission causes damages to another through fault or negligence shall be obliged to repair the damage so done. P.R. Laws Ann. tit. 31 § 5141 (2006).

HIMA challenges the third-party complaint against it on the ground that it is separate and distinct from the main action. However, such a challenge cannot defeat a third-party complaint that seeks to implead a joint tortfeasor. *See Lopez de Robinson,* 162 F.R.D. at 259. In fact, cases "[w]here the applicable state law permits contribution among joint tortfeasors, regardless of whether the plaintiff has sued them all in the first instance," are among "the most obvious case[s] for impleader." *Gov't Dev. Bank,* 132 F.R.D. at 133 (citations omitted). The instant action involves such a case: not only does Puerto Rico law recognize a general right of contribution among joint tortfeasors, *id.* (citing *Sanchez Rodriguez v. Lopez Jimenez,* 18 P.R. Offic. Trans. 808 (P.R.1987)), but Article 1802 itself specifically contemplates

that liability for an entity's misconduct might be reduced by the concurrent misconduct of others. *See* P.R. Laws Ann. tit. 31 § 5141 (2006) ("Concurrent imprudence of the party aggrieved does not exempt [defendant] from liability *but entails a reduction of the indemnity.*") (emphasis added).

By asserting that HIMA's medical negligence aggravated any injuries arising from defendants' alleged EMTALA violations, defendants have sufficiently alleged a direct line of liability between themselves and HIMA based upon the substantive right of contribution between joint tortfeasors. *See Nunez v. Horn,* 336 F.Supp. 447, 450 (D.P.R. 1970) (hospital physician accused of negligent medical treatment and the persons whose alleged negligence caused the accident motivating medical treatment at issue were joint tortfeasors, "irrespective of whether [subsequent hospital treatment was] rendered in a . . . negligent manner"). Thus, defendants' third-party complaint is properly lodged under Rule 14. *See Corning Glass Works v. P.R. Water Res.,* 396 F.2d 421, 423 (1st Cir. 1968) ("[A]n alleged joint tortfeasor defendant may at the outset of litigation implead all who by their concurrent negligence might be liable to him for contribution."); *Nunez,* 336 F.Supp. at 451 ("[N]othing stops the one who caused the original damage from recovering from the third party whose negligence caused the damages to become greater."); Richard D. Freer, *3–14 Moore's Federal Practice: Civil* § 14.07 ("[I]mpleader is proper if there is a question as to whether the parties are in fact joint tortfeasors . . . or whether liability is primary and secondary . . .").

■ HIMA also raises a number of challenges to the third-party complaint against it related to the complaint's merits and burdens. Preliminarily, we note that the decision on whether to dismiss a third-party complaint *on such grounds is left to the sound discretion of the court. Zeus Projects Ltd. v. Perez y Cia. de P.R.,* 187 F.R.D. 23, 30

(D.P.R.1999). In exercising its discretion, the court considers the following factors: (1) whether the third-party claim would prejudice the plaintiff, (2) the risk of unduly complicating the issues or unnecessarily delaying the resolution of the controversy, (3) the timeliness of the motion to implead, (4) the merit of the third-party claim, and (5) any additional expenses the claim may impose on the parties. *Id.* (citations omitted). Applying these factors to the instant case, we do not find dismissal warranted.

■ After careful review of defendants' allegations against HIMA, we disagree with HIMA's assertion that the same are "hollow," "frivolous," or "clearly unmeritorious," considering (1) the specifically enumerated instances of HIMA's alleged negligence, and (2) the fact that a professional liability case is "one of the most intricate and difficult to sustain in the field of personal injuries." *Nunez,* 336 F.Supp. at 450. HIMA's inclusion does not threaten to unduly delay the resolution of the case or prejudice plaintiff, nor does it unnecessarily complicate the question of defendants' liability. From the settlement status conference held on July 13, 2009, it appears a discovery schedule is in place and already well underway. Moreover, in their respective answers to plaintiffs' original complaint, defendants raise various challenges to the causal relationship between their alleged actions and plaintiffs' injuries; thus, the alleged concurrent or intervening liability of any third parties will already be an issue before the court. We also note that the third-party complaint was not untimely inasmuch as it was filed within the deadline set at the initial scheduling conference held on October 10, 2008. HIMA's inclusion reduces costs on all of the involved parties by consolidating related claims in one trial, best serving the interests of justice and judicial economy. We therefore *decline to dismiss or strike* the third-party complaint against HIMA.[1]

---

1. HIMA argues that, in the event its motion to dismiss is denied, the court should preclude defendants' (third party plaintiffs) use of expert testimony to establish HIMA's negligence. Because "expert testimony is generally essential in order to clarify complicated medical issues that are more prevalent in medical malpractice cases than in standard negligence cases," *Torres–Perez v. United States,* 530 F.Supp.2d 429, 433 (D.P.R. 2008) (citation omitted), the court **DENIES** HIMA's request to preclude defendants' use of expert testimony.

## IV. Conclusion

Based upon the foregoing, HIMA's motion (Docket No. 75) is DENIED.

**SO ORDERED.**